[Nos. 57766-8, 58027-8. En Banc. December 12, 1991.]

CERTIFICATION FROM THE
UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WASHINGTON
IN
JOHN C. WILMOT, ET AL, *Plaintiffs*, v. KAISER ALUMINUM AND CHEMICAL CORPORATION, *Defendant*.

MICHAEL R. MORAN, *Petitioner*, v. WASHINGTON FRUIT AND PRODUCE, *Respondent*.

---

48

50

*Barry E. Ryan*, for plaintiffs.

*Rodney K. Nelson* and *Abeyta & Nelson, P.S.*, for petitioner.

*Michael F. Nienstedt, Stephen L. Farnell*, and *Winston & Cashatt*, for defendant.

*Ryan M. Edgley* and *Lofland & Associates*, for respondent.

BRACHTENBACH, J. — In these consolidated cases, the primary question is whether an employee who alleges that he or she was wrongfully discharged in retaliation for filing a workers' compensation claim has a cause of action independent from that set out in RCW 51.48.025(2). We hold that plaintiffs may assert a wrongful discharge tort claim independently of RCW 51.48.025(2). We reverse the Court of Appeals' holding to the contrary in *Moran v. Washington Fruit & Produce*, 60 Wn. App. 548, 804 P.2d 1287, *review granted*, 116 Wn.2d 1023 (1991), and answer questions certified by the United States District Court for the Eastern District of Washington.

In *Wilmot v. Kaiser Aluminum & Chem. Corp.*, cause 57766-8, the case in which the federal court certified four questions, 22 former employees of Kaiser Aluminum and Chemical Corporation brought suit in Spokane County Superior Court asserting claims for, among other things, wrongful discharge in violation of public policy and the tort of outrage. They sought a declaratory judgment as to whether a common law wrongful discharge claim could be maintained in light of RCW 51.48.025(2). The case was removed to federal court.

According to allegations in plaintiffs' complaint: all of the plaintiffs were probationary employees of Kaiser who were terminable at will. Each plaintiff was injured on the job, and each either missed work as a result of the injury or continued to work with the injury because of a company policy that employees who missed work would be terminated. Each plaintiff filed a claim for workers' compensation benefits, and all contend they were discharged in violation of public policy established by RCW 51.48.025, which prohibits an employer from discharging or discriminating against employees who file or communicate to the employer an intention to file a workers' compensation claim. None of the plaintiffs filed complaints concerning alleged retaliatory discharges with the Department of Labor and Industries as provided for in the statute.

Kaiser moved to dismiss on the ground that the plaintiffs failed to state a claim upon which relief could be granted. Kaiser contends that RCW 51.48.025 provides an exclusive remedy for alleged retaliatory discharges in violation of the statute, and that the 90-day limitation for filing a complaint under the statute bars plaintiffs from maintaining this suit. A ruling on Kaiser's motion in federal court has been reserved pending the results of this court's resolution of the four certified questions.

In *Moran v. Washington Fruit & Produce*, cause 58027-8, Michael R. Moran filed suit against his former employer, Washington Fruit and Produce, asserting a wrongful discharge claim and alleging that he was terminated from his job because he filed a workers' compensation claim. Like the plaintiffs in the Wilmot case, Moran based his claim on the public policy exception to the employment at will doctrine. Also like those plaintiffs, Moran did not file a complaint with the Department of Labor and Industries under RCW 51.48.025(2), but instead asserted an independent tort claim for wrongful discharge.

Washington Fruit moved for summary judgment, maintaining in part that no claim had been filed pursuant to RCW 51.48.025(2) and that Moran had no cause of action for wrongful discharge independent of the statute. The trial court at first denied the motion, concluding that the filing provision in the statute was permissive, not mandatory. On reconsideration, the trial court granted summary judgment in favor of Washington Produce, relying on *Jones v. Industrial Electric-Seattle, Inc.*, 53 Wn. App. 536, 768 P.2d 520 (1989) (construing a similar statute as mandatory). Because it dismissed the case based on the legal conclusion that the statute was mandatory and exclusive, the court did not reach the parties' dispute about whether Moran was discharged by his employer or whether he voluntarily quit his job. Moran appealed to the Court of Appeals, which affirmed. Moran's petition for review was granted.

To aid the federal court, we organize our analysis in the two cases in accord with the certified questions.

I

The first, and primary, question certified by the federal court in Wilmot's case is: "Does a common law cause of action exist, for discharge of an employee in violation of public policy, in addition to that provided by RCW 51.48.025, where an employee is discharged by reason of having filed, or having expressed an intent to file, a workmen's compensation claim[?]"

Plaintiffs in both cases maintain that they are entitled to maintain tort actions for wrongful discharge independently of the provisions of RCW 51.48.025(2). Defendant employers in both cases maintain that the statute provides the exclusive remedies for a claim of retaliatory discharge when it is alleged that an employee was discharged for having filed or communicated to the employer an intent to file a workers' compensation claim.

We hold that RCW 51.48.025 is not mandatory and exclusive; a worker may file a tort claim for wrongful discharge based upon allegations that the employer discharged the worker in retaliation for having filed or expressed an intent to file a workers' compensation claim, independent of the statute.

In *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 232, 685 P.2d 1081 (1984), this court recognized "a cause of action in tort for wrongful discharge if the discharge of the employee contravenes a clear mandate of public policy." The exception is a narrow one. *Thompson*, at 232; *Grimwood v. University of Puget Sound, Inc.*, 110 Wn.2d 355, 367, 753 P.2d 517 (1988). We have noted that courts have found contravention of clear mandates of public policy "where the termination resulted because the employee exercised a legal right or privilege . . .." *Dicomes v. State*, 113 Wn.2d 612, 618, 782 P.2d 1002 (1989) (citing *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 384 N.E.2d 353 (1978) (where contravention of a clear mandate of public policy was found when an employer discharged an employee for pursuing a workers' compensation claim)).

■ ■ Even without RCW 51.48.025, we would acknowledge existence of a clear mandate of public policy against retaliatory discharge of employees for pursuing workers' compensation benefits and allow a tort cause of action for wrongful discharge, as have a number of other jurisdictions. *E.g., Kelsay v. Motorola, Inc., supra; Frampton v. Central Ind. Gas Co.*, 260 Ind. 249, 297 N.E.2d 425 (1973); *Sventko v. Kroger Co.*, 69 Mich. App. 644, 245 N.W.2d 151 (1976); *Krein v. Marian Manor Nursing Home*, 415 N.W.2d 793 (N.D. 1987); *see generally* Annot., *Recovery for Discharge From Employment in Retaliation for Filing Workers' Compensation Claim*, 32 A.L.R.4th 1221 § 4[a] (1984 & Supp. 1990). As we noted in *Thompson,* at 232, public policy may be judicially recognized, and "[o]ne of the clearest public policy exceptions to the employment-at-will doctrine is the discharge in retaliation for filing a workers' compensation claim." (Footnote omitted.) 1 L. Larson, *Unjust Dismissal* § 6.05[1], at 6-41 (1988).

In enacting RCW 51.48.025, the Legislature expressly set out the clear mandate of public policy giving rise to the exception to the employment at will doctrine. We must decide whether that public policy supports an independent tort action even though the statute sets out a remedy for violation of the statute. We have referred to this type of question twice before, that is, "whether a cause of action exists for wrongful discharge in violation of public policy when the declaration of public policy is declared in a statute already providing a remedy." *Grimwood,* at 367; *Bennett v. Hardy,* 113 Wn.2d 912, 925, 784 P.2d 1258 (1990).

As is evident from our examination of this question in this case, there is no automatic yes or no answer applicable to all cases where the statute setting forth public policy also contains a remedy. Instead, the answer depends upon the particular statute's language and provisions, and may, under appropriate circumstances, depend in part upon other manifestations of legislative intent.

RCW 51.48.025 provides:

(1) No employer may discharge or in any manner discriminate against any employee because such employee has filed or communicated to the employer an intent to file a claim for compensation or exercises any rights provided under this title. However, nothing in this section prevents an employer from taking any action against a worker for other reasons including, but not limited to, the worker's failure to observe health or safety standards adopted by the employer, or the frequency or nature of the worker's job-related accidents.

(2) Any employee who believes that he or she has been discharged or otherwise discriminated against by an employer in violation of this section may file a complaint with the director alleging discrimination within ninety days of the date of the alleged violation. Upon receipt of such complaint, the director shall cause an investigation to be made as the director deems appropriate. Within ninety days of the receipt of a complaint filed under this section, the director shall notify the complainant of his or her determination. If upon such investigation, it is determined that this section has been violated, the director shall bring an action in the superior court of the county in which the violation is alleged to have occurred.

(3) If the director determines that this section has not been violated, the employee may institute the action on his or her own behalf.

(4) In any action brought under this section, the superior court shall have jurisdiction, for cause shown, to restrain violations of subsection (1) of this section and to order all appropriate relief including rehiring or reinstatement of the employee with back pay.

■ Plaintiffs argue that "may" as used in subsection (2) ("[a]ny employee . . . may file a complaint") is permissive. They rely on the principle of statutory construction that when both "may" and "shall" are included in the same statutory provision, it is presumed the Legislature intended to distinguish between the terms, with "may" being permissive and "shall" being mandatory. *Scannell v. Seattle*, 97 Wn.2d 701, 704, 648 P.2d 435, 656 P.2d 1083 (1982). Subsection (2) of the statute also contains the term "shall" ("the director shall bring an action").

Defendants argue, however, that even if it is permissive, use of the term "may" means that if a worker wants to claim retaliatory discharge, he or she may do so under the

statute, but he or she may also choose not to pursue an action at all. Contrary to defendants' contention, it is unlikely the Legislature used a permissive term simply to tell a worker he or she may choose *not* to seek redress for an alleged retaliatory discharge. *See Strenge v. Clarke*, 89 Wn.2d 23, 28-29, 569 P.2d 60 (1977) (plurality). Indeed, by extending defendants' reasoning, a statute which provided that "[t]he following actions shall be commenced within six years" (RCW 4.16.040) would apparently require the filing of the action (as opposed to permitting plaintiff the choice). This is plainly nonsense.

Use of the term "may" in the same provision in which "shall" is used is strong evidence that the Legislature did not intend RCW 51.48.025(2) to provide the exclusive procedure and remedies to redress retaliatory discharges resulting from exercise of a worker's rights under RCW Title 51. Further, the statute contains no express language of exclusivity, nor does it even contain language strongly suggestive of exclusivity. Compare *Portillo v. G.T. Price Prods., Inc.*, 131 Cal. App. 3d 285, 287, 182 Cal. Rptr. 291, 292 (1982) (statute providing that discharge in retaliation for exercising workers' compensation rights is misdemeanor and providing for relief to worker held exclusive; statute states that Workers' Compensation Appeals Board is "vested with *full power*, authority, and *jurisdiction* to try and *determine finally* all the matters specified in this section"). (Some italics ours.)

Defendant Kaiser maintains, though, that the placement of RCW 51.48.025 in RCW Title 51 and the exclusivity provisions of the Industrial Insurance Act (IIA), RCW 51.04.010 and RCW 51.32.010, show that the statute is meant to be exclusive. Kaiser relies heavily upon *Wolf v. Scott Wetzel Servs., Inc.*, 113 Wn.2d 665, 782 P.2d 203 (1989). As explained hereafter, *Wolf* is distinguishable because the statute at issue in that case differs markedly and in significant respects from the statute at issue in this case.

Under the quid pro quo compromise reflected in the Industrial Insurance Act, the employer pays some claims for which there would be no liability under common law, and the employee gives up common law actions and remedies in exchange for sure and certain relief. *Wolf*, at 668-69; *see* RCW 51.04.010. To this end, RCW 51.04.010 provides that "all phases of the premises are withdrawn from private controversy" and RCW 51.32.010 provides that compensation under the IIA is "in lieu of any and all rights of action whatsoever against any person whomsoever".

RCW 51.04.010 further provides, however, that "jurisdiction of the courts of the state over such causes [is] . . . abolished, *except as in this title provided*." (Italics ours.) RCW 51.48.025(4) expressly provides that in any action brought under the statute, "the superior court shall have jurisdiction, for cause shown, to restrain violations of subsection (1) of this section and to order all appropriate relief . . .." The statute thus expressly restores jurisdiction to the superior courts for the purpose of actions based on conduct prohibited by RCW 51.48.025. Despite the statute's placement in RCW Title 51, the exclusivity provisions of the Industrial Insurance Act do not, as to retaliatory discharge or discrimination for pursuit of benefits under the IIA, abolish superior court jurisdiction over causes of action arising from such conduct. Because such conduct may give rise to actions in superior court under the statute, there is no basis to conclude that the exclusivity provisions would preclude superior court jurisdiction in a common law action based upon the same conduct.

The statute provides that if the Director finds no violation the worker may pursue the action individually in superior court. Thus, by the express terms of the statute a claim for discharge or discrimination within the meaning of RCW 51.48.025 is not a "phase of the premises" withdrawn from private controversy under RCW 51.04.010.

These two factors, that superior court jurisdiction is allowed as to the actions based on the conduct in question, and that the statute expressly allows actions brought

directly by the employee against the employer, indicate that the general exclusivity provisions of the IIA do not compel the conclusion that RCW 51.48.025 is exclusive.

Defendant Kaiser also maintains that the statute at issue here provides an "inexpensive and expedient method" of redress, and reflects the quid pro quo compromise of the IIA. Brief of Defendant (cause 57766-8), at 22-23. Kaiser maintains that the statute should therefore be construed as exclusive.

The statute plainly does not provide an inexpensive and expedient method of redress. If the Director finds a violation of the statute, the Director must bring an action in superior court; if the Director does not find a violation, the employee may institute the action. Nothing in the statute permits the Director to order any relief, nothing in the statute allows for any administrative remedy, and nothing in the statute sets any time period for the filing of the action in superior court. Nothing in the statute assures any final judgment within any particular time frame. Nothing in the statute provides certainty of relief upon the Director's determination of a violation, and nothing in the statute precludes an employee from filing an action, with attendant expense and inconvenience to both worker and employer, if the Director does not find a violation. Nothing in the statute prevents an employee from filing a frivolous suit, and nothing in the statute prevents an employer from marshaling resources to defend a suit brought by either the Director or the worker.

Kaiser maintains further that the decision in *Wolf v. Scott Wetzel Servs., Inc., supra,* controls this case. In *Wolf,* the question was whether RCW 51.48.017 provides the exclusive remedy for wrongful delay or termination of benefits by a claims administrator of a self-insured employer. The court held that a civil cause of action does not lie. Under that statute, RCW 51.48.017, the Director may order additional amounts paid by a self-insurer to accrue to the benefit of the claimant for unreasonable delay or refusal to pay benefits. The statute states that the Direc-

tor "shall issue an order determining whether there was an unreasonable delay or refusal to pay benefits within thirty days upon the request of the claimant."

Thus, the statute at issue in *Wolf* is unlike RCW 51.48.025, because the statute at issue in *Wolf* does not provide for restoration of superior court jurisdiction; instead an administrative remedy is set out and the Director may decide the question of delay or refusal to pay and order relief.

The statute at issue in *Wolf* differs from that here in other ways. In holding that the statute provided the exclusive remedy, the court in *Wolf* explained the reasons for the majority view that a civil cause of action does not lie for wrongful delay or termination of benefits:

> The rationale of these cases has typically been that the legislature, anticipating that bad faith in delaying payment of benefits would occur on occasion, provided a quick, simple and readily accessible method of resolving disputes over such payments without the proof and defenses incident [to a common law action], the intolerable delay in resolution of a lawsuit, economic waste to all and expense to the worker . . ..

*Wolf*, at 671 (quoting *Robertson v. Travelers Ins. Co.*, 95 Ill. 2d 441, 448, 448 N.E.2d 866 (1983) omitting citations and internal quotation marks).

As explained above, and in conspicuous contrast to the statute addressed by the court in *Wolf*, the statute at issue here has none of the features identified in the passage just quoted from *Wolf* which favor the conclusion that the statute provides the exclusive procedure and remedy for retaliatory discharge. The statute at issue here simply does not provide a simple, quick resolution of disputes through an administrative procedure.

Kaiser argues, though, that this case is like *Wolf* because this case involves claims closely related to and growing out of the workplace injury. This argument is based upon the analysis in *Wolf* where the court distinguished a case in which it had held that the exclusive remedy provisions of the IIA did not bar an employment discrimination claim

under RCW 49.60, where the employee alleged the employer failed to accommodate a disability for which the worker had received workers' compensation benefits. *Reese v. Sears, Roebuck & Co.*, 107 Wn.2d 563, 731 P.2d 497 (1987), *overruled on other grounds in Phillips v. Seattle*, 111 Wn.2d 903, 766 P.2d 1099 (1989). The court in *Wolf* said that the situation in *Reese* was distinguishable in part because an employment discrimination claim based upon failure to accommodate a disability could be maintained regardless of whether the underlying injury occurred in the workplace. However, in *Wolf* "the underlying workplace injury necessarily preceded the claim for wrongful delay or termination of benefits." *Wolf*, at 674. The court reasoned that an action such as the one there involved, concerning the administration of a claim, involves one of the "phases of the premises" exclusively encompassed by the IIA. *Wolf*, at 674-75.

It is true that without the underlying workplace injury for which the worker pursues benefits under the IIA, there would seldom be a retaliatory discharge as contemplated by RCW 51.48.025. However, the conduct proscribed by RCW 51.48.025, discharge or discrimination based upon exercise of rights under the IIA, does not relate as directly to administration of the worker's claim under the IIA as the conduct proscribed by RCW 51.48.017, delay or termination of benefits.

Contrary to defendants' contention, we do not find *Wolf* controlling in this case.[1] Further, the reasons why the statute at issue here differs from that considered in *Wolf* signify that the statute is not exclusive.

█ There are further reasons why we conclude the statute is not the exclusive means of redress. Returning to the

---

[1]We also do not find *Reese v. Sears, Roebuck & Co.*, 107 Wn.2d 563, 731 P.2d 497 (1987), *overruled on other grounds in Phillips v. Seattle*, 111 Wn.2d 903, 766 P.2d 1099 (1989) controlling, contrary to plaintiffs' view. In *Reese*, the court endeavored to give effect to two statutory schemes. Here, only one statute is at issue, and our responsibility is to ascertain whether the Legislature intended the statute to be exclusive.

question raised in *Grimwood v. University of Puget Sound, Inc.*, 110 Wn.2d 355, 753 P.2d 517 (1988) and *Bennett v. Hardy*, 113 Wn.2d 912, 784 P.2d 1258 (1990), the fact that the statute sets forth certain remedies is relevant to the exclusivity inquiry. However, it is not simply the presence or absence of a remedy which is significant; rather, the comprehensiveness, or adequacy, of the remedy provided is a factor which courts and commentators have considered in deciding whether a statute provides the exclusive remedies for retaliatory discharge in violation of public policy. *See* 1 L. Larson, *Unjust Dismissal* § 9.03[1], at 9-34 to 9-35 (1988). Further, it is one factor to consider, along with others relating to legislative intent.

While RCW 51.48.025(4) sets forth some remedies for retaliatory discharge in violation of the statute, it does not clearly authorize all damages which would be available in a tort action. For example, emotional distress damages are recoverable in a tort action based upon wrongful discharge in violation of a clear mandate of public policy. *Cagle v. Burns & Roe, Inc.*, 106 Wn.2d 911, 919, 726 P.2d 434 (1986). It is not clear whether "all appropriate relief" authorized under the statute would include emotional distress damages. Further, if an action in superior court is brought by the Director, who controls the lawsuit? Can the employee insist on a claim for general damages, assuming general damages are authorized by the statute in the first place? The specific remedies listed, rehiring or reinstatement with back pay, appear equitable in nature, adding to the doubt about whether the Legislature intended that "all appropriate relief" under the statute means all normally available damages in a tort action, and raising the further question whether the worker is entitled to a jury trial.

We do not attempt to answer these questions as they may arise in an action brought pursuant to the statute, but these questions demonstrate uncertainty as to the adequacy of the remedies set out in the statute.

Further adding to the puzzle is the language in subsection (4) that relief is to be ordered by the court for cause

shown. "For cause shown" again implies equity, and is an unusual term to use in the context of a trial in superior court where general damages might be awarded. The notion that the court may order all appropriate relief is also unusual, in that a court does not generally order a defendant to pay in a civil case, but instead awards a judgment. Again, we do not decide here what relief is available under the statute, but the statute is unclear as to whether it allows for the possibility of a general damages award. We think such damages are necessary to constitute an adequate remedy.

Had the Legislature intended the statute to be exclusive it would have been very simple to have expressly said so, or to have included language expressly providing that a worker may recover "other damages" or similar language plainly allowing general damages.

Another factor often addressed by courts in deciding whether a statutory remedy for wrongful discharge is exclusive is whether the right embodied in the statute preexisted at common law or is a right created by the statute. 1 L. Larson, *Unjust Dismissal* § 9.03[1], at 9-34 (1988).

■ Wrongful discharge in violation of public policy was recognized at common law in *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 685 P.2d 1081 (1984), prior to enactment of RCW 51.48.025 (Laws of 1985, ch. 347, § 8). We agree with the analysis in *Call v. Scott Brass, Inc.*, 553 N.E.2d 1225, 1227 (Ind. Ct. App. 1990) that judicial recognition of the public policy exception to the employment at will doctrine marks the existence of the common law action. In *Call*, an employee asserted a wrongful discharge claim based upon termination for compliance with a summons to appear for jury service. The court held that a statute taking effect in 1977 making it unlawful to fire an employee for jury duty did not create a new cause of action, but instead the public policy exception adopted in 1973 in *Frampton v. Central Ind. Gas Co.*, 260 Ind. 249, 297 N.E.2d 425 (1973) predated the statute and the statutory remedies were not exclusive. *Frampton* concerned retaliatory discharge for fil-

ing a workers' compensation claim, not jury duty, but the court noted that each case concerning retaliatory discharge involved interpretation of *Frampton*. *Call*, at 1227-29. The court interpreted the public policy in terms of the employee's exercise of a statutory right or fulfillment of a statutory obligation, and not in terms of the particular conduct of the employer at issue. *Call*, at 1227.

Similarly, the public policy exception cause of action in Washington cases is traced to *Thompson v. St. Regis Paper Co., supra. See Dicomes v. State*, 113 Wn.2d 612, 617, 782 P.2d 1002 (1989); *Bennett v. Hardy, supra* at 923-24. While we have not had previous occasion to address the public policy against retaliatory discharge for pursuing workers' compensation benefits, the common law cause of action adopted in *Thompson* is the source of wrongful discharge tort claims based upon violation of public policy. We conclude the common law cause of action preceded enactment of the statute. This fact further supports the conclusion that the statutory remedies are cumulative rather than exclusive.

Finally, on the question whether the Legislature intended the statute to be exclusive, the parties have offered various statements made during the legislative process as indications of legislative intent. The statements are at best inconclusive as to legislative history.

■ The first statement is that of a legislator explaining that an amendment to the original bill was designed to keep frivolous suits out of court and permit efficient administrative handling of discrimination claims. Comment of Representative Wang re SHB 1089, Transcript of Proceedings of The House of Representatives (Apr. 9, 1985). As we have previously cautioned, even a legislator's comments from the floor of the Legislature are not necessarily indicative of legislative intent. *North Coast Air Servs., Ltd. v. Grumman Corp.*, 111 Wn.2d 315, 326-27, 759 P.2d 405 (1988). More significantly, the comments offered relate to an amendment which, among other things, would have allowed the Director to issue a determination, including findings,

and to grant relief. House transcript (Apr. 9, 1985). That amendment is not part of the enacted statute. Patently, comments about the purpose of an amendment which does not become part of the enacted legislation, particularly where that legislation is in sharp contrast to the enacted legislation, cannot serve as evidence of legislative intent.

The second statement is that of a staff attorney who testified at a Senate hearing. Statement of Mark Zukerman, Excerpts from Hearing of Senate Commerce and Labor Committee (Apr. 15, 1985). The statement's value is minimal at best. *North Coast Air Servs.*, at 326. Further, the statement appears to us to relate to what conduct is violative of what policy, insofar as the proposed legislation was concerned, and is not indicative of whether the legislation would be exclusive. Third is a statement made at a meeting of the Senate committee. Comment of Joe Dear, Excerpt from meeting of Senate Commerce and Labor Committee (Apr. 15, 1985). Again, testimony before a legislative committee is given little weight. *North Coast Air Servs.*, at 326. Further, the particular statement was to the effect that procedures under the proposed legislation would speed up the remedy as opposed to going into court with the aim of obtaining an exception to the employment at will doctrine. We view the statement as no more than a statement of desire that the Legislature assure there be a retaliatory discharge action based on discharge for pursuing workers' compensation benefits without the need of obtaining judicial recognition of the cause of action.

Next, Kaiser points out that the Legislature rejected a proposed amendment which would have placed responsibility for administration of the statute with the Human Rights Commission. In defendant Kaiser's opinion, that amendment if enacted would have allowed simultaneous pursuit of administrative and judicial relief. We will not speculate as to the reason the Legislature rejected the proposed amendment. We note, moreover, that a legislator's comment, claimed by Kaiser to support this view, simply indicated that it made more sense for the Department of Labor and

Industries to handle claims under the statute, but did not give exclusivity as the basis for this conclusion. Comment of Senator Talmadge, Excerpts of Senate Floor Action (Apr. 22, 1985).

Finally, plaintiff Moran offers a joint select committee report as legislative history to show that the Legislature was aware from the outset that enactment of a statute would not necessarily be redundant of a tort action, and that "[a]ccording to Larson's *Workers' Compensation Law*, courts usually hold that the remedy that is created by statute is not exclusive." Joint Select Committee on Workers' Compensation, *Report to the Legislature* 131-32 (1985). At most this report could be said to inform legislators that a statute would not necessarily be exclusive, but because it is a preliminary report to the Legislature it would be pure speculation on our part to conclude that it is indicative of legislative intent.

We conclude that the statute is not exclusive. This conclusion in no way undermines the exclusivity provisions of the IIA. As explained herein, the act expressly permits restoration of superior court jurisdiction if provided for in RCW Title 51, and RCW 51.48.025 contains such a provision, indicating judicial rather than administrative resolution of disputes. Further, the statute authorizes an action in superior court brought by and on behalf of the worker against the employer, in the event the Director does not pursue an action. Clearly, the retaliatory discharge claim is not a "phase of the premises" removed from private controversy.

We note that our analysis does not render the statute a nullity. First, the statute stands as a significant legislative statement of public policy. Second, by allowing a worker to proceed under the statute, the Legislature has made available to the worker the expertise and assistance of the Department of Labor and Industries in determining whether there has been a violation of the statute. A worker may have little means to support an investigation into alleged wrongdoing, and may benefit from the Department's

investigation. The worker may also benefit from the Director's pursuit of an action under the statute. Further, the "preliminary screening" provided for under the statute may have the salutary effect of encouraging resolution of disputes without proceeding to court, even though, as we have noted, the statute does not provide for administrative resolution of disputes.

Lastly, on this issue, we note that it is evident from the statute that the wrong which the statute addresses is the wrongful discrimination against or discharge of a worker who lawfully pursues benefits under the IIA. The balancing of interests which the IIA represents would be intolerably undermined could an employer circumvent the act by the threat of or actual discharge of the worker, or by other discrimination contemplated by the statute. While the employer has some protection under the statute in that a preliminary screening process may result in an employee abandoning a meritless or frivolous cause, the obvious purpose of the statute is to protect workers from employers who violate the quid pro quo compromise of the IIA. Permitting the independent tort action for wrongful discharge serves this purpose as well, without frustrating legitimate employer interests.

In summary, RCW 51.48.025 is not mandatory and exclusive.

To the extent the analysis in *Jones v. Industrial Electric-Seattle, Inc.*, 53 Wn. App. 536, 768 P.2d 520 (1989) is inconsistent with our analysis herein, it is disapproved.

## II

The second question certified by the federal court is: "Does such a common law cause of action exist where the employee is discharged for absenteeism caused by an on-the-job injury?"

■ Defendant Kaiser has maintained that this issue is really not presented to this court by this case. We disagree. Under Fed. R. Civ. P. 12(b)(6), "[f]or purposes of the motion

to dismiss, the complaint is construed in the light most favorable to plaintiff and its allegations are taken as true." 5A C. Wright & A. Miller, *Federal Practice* § 1357 (2d ed. 1990); *see H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249, 106 L. Ed. 2d 195, 109 S. Ct. 2893 (1989); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974). The complaint sufficiently states a claim if in the context of the complaint the plaintiff can prove any set of facts entitling plaintiff to relief. *H.J. Inc.*, at 249-50; *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). Plaintiffs alleged that Kaiser had a policy of terminating probationary employees if they missed work. Plaintiffs alleged that each of them either missed work as a result of a work-related injury or continued to work with the injury due to this policy. Absenteeism resulting from a work-related injury is clearly encompassed by these allegations, as is the issue whether an employer may escape liability in a retaliatory discharge action by claiming that the discharge was a result of absenteeism and not in retaliation for the worker's pursuit of benefits under the IIA.

Moreover, the federal court has decided that it is necessary to ascertain the law of this State on this question, and we therefore render our answer to the question. *See* RCW 2.60.020.

Lest any confusion result from our discussion of this issue, we perceive that the question arising in cases like these may be broader than the question framed by the federal court. Therefore, in answering the federal court's specific question, we discuss that question in context.

We begin with the principle that an employee who alleges wrongful discharge in violation of public policy

> has the burden of proving his dismissal violates a clear mandate of public policy. Thus, to state a cause of action, the employee must plead and prove that a stated public policy, either legislatively or judicially recognized, may have been contravened. . . . However, once the employee has demonstrated that his discharge may have been motivated by reasons that contravene a clear mandate of public policy, the

burden shifts to the employer to prove that the dismissal was for reasons other than those alleged by the employee.

*Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 232-33, 685 P.2d 1081 (1984).

In *Baldwin v. Sisters of Providence in Wash., Inc.*, 112 Wn.2d 127, 134, 769 P.2d 298 (1989), the court stated that in statutory discrimination cases, once the employee established the prima facie case, the burden of production shifted to the employer to show a legal excuse for the termination, but the burden of persuasion remains at all times with the employee. *Baldwin*, at 134. The court said the same rule applies in the context of breach of employment contract cases where termination is allegedly in violation of the contract ("common law termination claims"):

> Once a plaintiff has made out a prima facie case, the employer must articulate a legitimate, nondiscriminatory reason for termination. The employer's burden at this stage is not one of persuasion, but rather a burden of production. To go forward, the employer need only articulate reasons sufficient to meet the prima face case. . . . Once the employer fulfills his burden of production, to create a genuine issue of material fact the plaintiff must satisfy his ultimate burden of persuasion and show that the employer's articulated reasons are a mere pretext for what, in fact, is a discriminatory purpose.

*Baldwin*, at 136 (quoting *Grimwood v. University of Puget Sound, Inc.*, 110 Wn.2d 355, 363-64, 753 P.2d 517 (1988)).

■ We hold that the same rule, as clarified below, applies in cases where plaintiff alleges wrongful discharge in retaliation for pursuing workers' compensation benefits.

The first step, therefore, is for plaintiff to make out a prima facie case for retaliatory discharge. To do this, plaintiff must show (1) that he or she exercised the statutory right to pursue workers' benefits under RCW Title 51 or communicated to the employer an intent to do so or exercised any other right under RCW Title 51; (2) that he or she was discharged; and (3) that there is a causal connection between the exercise of the legal right and the discharge, *i.e.*, that the employer's motivation for the discharge was the employee's exercise of or intent to exercise the statutory

rights. *See* 'Love, *Retaliatory Discharge for Filing a Workers' Compensation Claim: The Development of a Modern Tort Action,* 37 Hastings L.J. 551, 566-67 (1986); *Gonzalez v. Prestress Eng'g Corp.,* 194 Ill. App. 3d 819, 551 N.E.2d 793 (1990).

As to the third element of the prima facie case, some courts hold that a plaintiff may establish the required case by showing that the worker filed a workers' compensation claim, that the employer had knowledge of the claim, and that the employee was discharged. Love, at 573 (citing *Axel v. Duffy-Mott Co.,* 47 N.Y.2d 1, 10, 389 N.E.2d 1075, 1079, 416 N.Y.S.2d 554, 558-59 (1979)). If the plaintiff meets this standard, a rebuttable presumption is created in favor of the employee which precludes the court from granting a motion for nonsuit or dismissal at the end of plaintiff's case.

We agree in general with this approach. Proof of the employer's motivation may be difficult for the employee to obtain. "Ordinarily the prima facie case must, in the nature of things, be shown by circumstantial evidence, since the employer is not apt to announce retaliation as his motive." 1 L. Larson, *Unjust Dismissal* § 6.05[5], at 6-51 (1988); *see Axel,* at 6; *Powell v. Wyoming Cablevision, Inc.,* 184 W. Va. 700, 704, 403 S.E.2d 717, 721 (1991).

Discharge some length of time after the employee's filing of a claim will be less likely to reflect an improper motive connected with that claim. Thus, as Larson suggests, in establishing the prima facie case, "[p]roximity in time between the claim and the firing is a typical beginning point, coupled with evidence of satisfactory work performance and supervisory evaluations. Evidence of an actual pattern of retaliatory conduct is, of course, very persuasive." (Footnotes omitted.) 1 L. Larson § 6.05[5], at 6-51.

Finally, as to plaintiff's ultimate proof, we reject one test of causation, *i.e.,* that retaliation for pursuing workers' compensation benefits was the sole reason for the discharge. *E.g., Kern v. South Baltimore Gen. Hosp.,* 66 Md. App. 441, 504 A.2d 1154 (1986) (Maryland statute states that employee may not be discharged "solely" for filing workers'

compensation claim; absenteeism due to injury legitimate ground for discharge). This requirement is difficult for a plaintiff to meet, Love, at 571-72, and, we conclude, inconsistent with the public policy mandate expressed in RCW 51.48.025. An employer could produce some evidence of a second motive, and even if that motive had slight impact on the discharge decision, an employee would fail in his or her ultimate burden.

Therefore, in establishing the prima facie case, the employee need not attempt to prove the employer's sole motivation was retaliation or discrimination based on the worker's exercise of benefits under the IIA. Instead, the employee must produce evidence that pursuit of a workers' compensation claim was *a* cause of the firing, and may do so by circumstantial evidence as described above.

If the plaintiff presents a prima facie case, the burden shifts to the employer.

To satisfy the burden of production, the employer must articulate a legitimate nonpretextual nonretaliatory reason for the discharge. 1 L. Larson, *Unjust Dismissal* § 6.05[6] (1988). The employer must produce relevant admissible evidence of another motivation, but need not do so by the preponderance of evidence necessary to sustain the burden of persuasion, because the employer does not have that burden, *Baldwin*, at 136.

If the employer fails to produce any evidence of other motivation for the discharge, a directed verdict in favor of plaintiff may result. *See Baldwin*, at 136. However, as we said in *Baldwin*, if the employer produces evidence of a legitimate basis for the discharge, the burden shifts back to the plaintiff. In *Baldwin* we said that the plaintiff must establish the employer's articulated reason is pretextual. In the context of the public policy mandate with which we are here concerned, some clarification of plaintiff's burden is necessary. In this regard, we address two further tests regarding what plaintiff must ultimately prove in a retaliatory discharge claim based upon wrongful discharge for pursuing workers' compensation benefits.

The first of these is a "substantial" or "significant" factor test, where the employee's ultimate proof is to prove by a preponderance of the evidence that retaliation was a substantial or important factor motivating the discharge. The other test is the "determinative factor" test, under which the employee must prove that the employer would not have discharged the employee but for the fact that the employee filed a workers' compensation claim. Love, at 571-72.[2]

Insofar as the present cases are concerned, under the determinative factor test an employer could clearly contravene the public policy mandate of RCW 51.48.025, yet not be liable for wrongful discharge. This would be the result, for example, if the employer fired an employee both for misconduct and for pursuing a workers' compensation claim, but the employee is unable to sustain the burden of proving that the employer would not have fired the worker had the worker not pursued benefits under the IIA. Under the substantial factor test, if the pursuit of a claim for benefits was a significant or substantial factor in the firing decision, the employer could be liable, even if the employee's conduct otherwise did not entirely meet the employer's standards. Neither test is perfect.

■ Nonetheless, in the context of retaliation for exercise of workers' compensation rights, we conclude that the substantial factor test is preferable. The mandate in RCW 51.48.025 is that retaliatory discharge or discrimination founded on an employee's assertion of statutory rights to benefits violates sound public policy. An employer is simply not entitled to discharge employees because of their assertion of their statutory rights. An employer who fires an employee in substantial part because of assertion of those statutory rights must be accountable, else the great quid

---

[2]A question regarding similar tests and the respective burdens of proof in the context of age discrimination is addressed in *Allison v. Housing Auth.*, 118 Wn.2d 79, 821 P.2d 34 (1991); *see also Pannell v. Food Servs. of Am.*, 61 Wn. App. 418, 431, 810 P.2d 952 (1991) (approving instruction that plaintiff must prove age was a determining factor in termination); *Stork v. International Bazaar, Inc.*, 54 Wn. App. 274, 285, 774 P.2d 22 (1989) (test stated as whether age was the determinative factor in discharge decision).

pro quo compromise of the IIA is altered unfairly in the employer's favor. It must be kept in mind that the employer controls his or her own conduct.

It also must be kept in mind that the employee must prove the wrongful conduct, and must do so without the benefit of the employer's own knowledge of the reason for the discharge, and generally without the access to proof which the employer has. One commentator states that the determinative factor test of motivation has been adopted by a number of courts,[3] but those courts generally place the *burden of persuasion* on the employer to prove that even without pursuit of the workers' compensation claim, the employer would have discharged the employee. Love, at 574. We have concluded that in actions based upon violation of the public policy mandate set out in RCW 51.48.025, the burden of persuasion never shifts to the employer.

In light of the public policy at issue, and in light of the allocation of burdens of proof in a retaliatory discharge case, balancing the interests here involved weighs in favor of the substantial factor test for plaintiff's proof of the employer's motivation. We adopt that test, agreeing with courts which have applied the substantial factor test in the context of discrimination against or retaliatory discharge of employees who exercise or express an intent to exercise workers' compensation rights. *See, e.g., Goins v. Ford Motor Co.*, 131 Mich. App. 185, 347 N.W.2d 184 (1983); *Thompson v. Medley Material Handling, Inc.*, 732 P.2d 461 (Okla. 1987); *Bishop v. Hale-Halsell Co.*, 800 P.2d 232 (Okla. 1990); *Powell v. Wyoming Cablevision, Inc.*, 184 W. Va. 700, 703-04, 403 S.E.2d 717, 720-21 (1991); *cf. Smith v. Smithway Motor Xpress, Inc.*, 464 N.W.2d 682, 686 (Iowa 1990) (adopting a "determining factor" test under which claim for workers' compensation benefits need not be main reason behind discharge decision, but instead need only be reason which tips the scales one way or the other; court notes that

---

[3]The commentator states that most courts apply the determinative factor test. Love, at 574. As noted in the text, a number of courts have recently applied the substantial factor test.

"[i]f retaliation is allowed to weigh at all in the employer's decision to discharge, there will be a chilling effect on employees entitled to claim benefits").

■ Because the substantial factor test is the appropriate standard by which plaintiff must ultimately prove his or her claim by a preponderance of the evidence, the plaintiff may respond to the employer's articulated reason either by showing that the reason is pretextual, or by showing that although the employer's stated reason is legitimate, the worker's pursuit of or intent to pursue workers' compensation benefits was nevertheless a substantial factor motivating the employer to discharge the worker.

Turning now to the case before us, the first matter implicitly raised by the federal court's question is whether a policy against absenteeism will serve as a legitimate reason for firing an employee, when that absenteeism results from a work-related injury. In fairness to defendant Kaiser, it does not precisely argue that this is a legitimate reason, but instead it assumes that RCW 51.48.025 protects workers who are fired due to absenteeism caused by an industrial injury.

Other courts have split on the question whether absenteeism resulting from a work-related injury may provide a legitimate basis for dismissal in the face of public policy prohibiting retaliatory discharge for seeking workers' compensation benefits. The Kansas Supreme Court has held that absences due to a work-related injury could not be counted against an employee so as to support her discharge, because it would allow employers to indirectly fire employees for filing workers' compensation claims in violation of public policy. *Coleman v. Safeway Stores, Inc.*, 242 Kan. 804, 752 P.2d 645 (1988); *accord, Caldwell v. Columbus Developmental Ctr.*, 47 Ohio App. 3d 100, 547 N.E.2d 417 (1989).

However, a number of courts have held that a neutral policy of discharging employees for absenteeism may provide a legitimate reason to discharge an employee even in the face of a public policy mandate prohibiting discharge or

discrimination based upon that employee's exercise of workers' compensation rights. *See Chiaia v. Pepperidge Farm, Inc.,* ___ Conn. App. ___, 588 A.2d 652 (1991); *Slover v. Brown,* 140 Ill. App. 3d 618, 488 N.E.2d 1103 (1986); *Smith v. Electrical Sys. Div. of Bristol Corp.,* 557 N.E.2d 711 (Ind. Ct. App. 1990); *Clifford v. Cactus Drilling Corp.,* 419 Mich. 356, 353 N.W.2d 469 (1984); *Galante v. Sandoz, Inc.,* 196 N.J. Super. 568, 483 A.2d 829 (1984); *see generally* Love, *Retaliatory Discharge for Filing a Workers' Compensation Claim: The Development of a Modern Tort Action,* 37 Hastings L.J. 551, 576-77 (1986); 1 L. Larson, *Unjust Dismissal* § 6.05[6], at 6-51 to 6-52 (1988).

■ It is possible that an employer could claim that discharge of an employee was for absenteeism resulting from a work-related injury and thereby attempt to indirectly violate the public policy mandate in RCW 51.48.025. However, the essence of a wrongful discharge tort action is that the employer has intentionally wronged the employee. *Cagle v. Burns & Roe, Inc.,* 106 Wn.2d 911, 915-16, 726 P.2d 434 (1986). Courts are concerned, therefore, with retaliatory motive in cases such as these, and a neutral absenteeism policy lacks, in general, the illegal motive which plaintiff must establish. For this reason, we conclude that there should be no per se rule that a discharge for absenteeism is an illegal reason for the discharge.

This is not to say, however, that simply pointing to a policy of discharging employees for excessive absenteeism will entitle an employer to prevail. For example, if that policy is not evenly applied, or if it is applied where an employee's absence is relatively brief, an employee may use those circumstances as tending to show the absenteeism policy was a pretext for discharge. *See generally Powell v. Wyoming Cablevision, Inc.,* 184 W. Va. 700, 705-07, 403 S.E.2d 717, 722-24 (1991) (discussing circumstances which might show absenteeism is a pretext for retaliatory discharge). Moreover, under the substantial factor test we have adopted herein, an employee may still be able to present proof that although absenteeism may constitute a legiti-

mate reason for discharge, the employee's pursuit of workers' benefits was also a significant factor motivating the employer. If the employee carries his or her burden of proof on this point, the employer may still be liable.

We note, moreover, that RCW 51.48.025(1) expressly contains some legitimate reasons for discharge, and indicates more are available:

> [N]othing in this section prevents an employer from taking any action against a worker for other reasons including, but not limited to, the worker's failure to observe health or safety standards adopted by the employer, or the frequency or nature of the worker's job-related accidents.

Thus, for example, an employee may be injured on the job, file a workers' compensation claim, and then be discharged without resulting liability to the employer if the reason for the discharge was the fact that the employee failed to observe health and safety standards, even though that failure resulted in the work-related injury for which the benefits claim was filed. If that injury, resulting from failure to heed health and safety standards, causes the worker to be absent from work for a period of time which contravenes the employer's policy against absenteeism, liability still may not attach. If, however, the employee can present sufficient evidence to prove that the pursuit of or intent to pursue workers' compensation benefits was also a significant factor in the decision to discharge, then the employer's stated reasons, while constituting legitimate nonpretextual reasons for the discharge, will not preclude liability.

In answer to the federal court's specific question, then, we hold that discharge of an employee for absenteeism resulting from a workplace injury, under a neutral policy that employees will be discharged for excessive absenteeism, may be a legitimate reason for discharge which will satisfy an employer's burden of production in response to plaintiff's prima facie case. The common law tort action for wrongful discharge or an action brought under RCW 51.48.025 may proceed despite an employer's policy against

such absenteeism, however, if a worker nevertheless can show that a retaliatory or discriminatory motive, based on the worker's pursuit of benefits under the IIA, was also a substantial factor motivating the discharge decision.

## III

The third question certified by the federal court is: "If such common law cause of action(s) exist, is the filing of a 90-day claim with the Director of Labor and Industries a condition precedent to the initiation of such actions?"

As we have noted above, under the IIA employees have agreed to give up common law actions and remedies in exchange for sure and certain relief under the act. However, "Washington has long recognized that the Act does not contemplate that an employee's common law remedy can be abolished without providing a substitute remedy." *McCarthy v. Department of Social & Health Servs.*, 110 Wn.2d 812, 817, 759 P.2d 351 (1988). As we have explained above, RCW 51.48.025 does not provide a substitute remedy for a common law claim brought pursuant to *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 685 P.2d 1081 (1984). The statute only empowers the Director to bring an action in superior court on the employee's behalf, and then only if the employee chooses to proceed under the statute. Relief is not certain even if the Director has determined that a violation has occurred. Further, nothing in the statute suggests that filing a claim with the Director is a condition precedent to an independent tort action.

Accordingly, we conclude that filing a claim with the Director is not a condition precedent to filing a common law cause of action.

It follows that the 90-day filing period set out in the statute for filing a complaint does not apply to an independent tort action for wrongful discharge. The 90-day time limit applies only to the statutory claim, as the statute speaks only of a time period vis-a-vis a complaint filed with the Director — "[a]ny employee who believes that he or she has been discharged . . . in violation of this section may file

a complaint *with the director* alleging discrimination within ninety days of the date of the alleged violation." (Italics ours.) RCW 51.48.025(2).

 Therefore, plaintiff Moran's question of the constitutionality of the 90-day filing period does not arise. In this regard, we note that plaintiffs in the federal case raised constitutional questions in their brief to this court. While our decision herein effectively disposes of those questions, we note that we would otherwise decline to reach them. Under the Federal Court Local Law Certificate Procedure Act, RCW 2.60, a federal court may certify to this court questions of local law which have not been clearly determined, and this court "shall render its opinion in answer thereto." RCW 2.60.020. RAP 16.16(a) states that this court may determine a question of law certified to it under the Federal Court Local Law Certificate Procedure Act "if the question of state law is one which has not been clearly determined and does not involve a question determined by reference to the United States Constitution." The constitutional questions in the federal case are not before us because they have not been certified by the federal court, and because plaintiffs rely upon federal constitutional provisions.

IV

The last question certified by the federal court is: "Does the discharge of an injured employee, because of having filed a workmen's compensation claim, or having expressed an intent to file a worker's compensation claim, or whose discharge was prompted by absenteeism caused by his on-the-job injury, give rise to a cause of action for the tort of outrage, in addition to that provided by RCW 51.48.025?"

As defendant Kaiser concedes, this court's holding in *Wolf v. Scott Wetzel Servs., Inc.*, 113 Wn.2d 665, 677, 782 P.2d 203 (1989) establishes that an employer's conduct may fall outside the immunity afforded under the IIA. In *Wolf*, while concluding that a civil action for wrongful delay or termination of benefits is barred by the exclusivity provisions of the

IIA, the court held that the tort of outrage could still lie if the conduct was sufficient to constitute the tort of outrage. *Wolf*, at 677. The court relied on RCW 51.48.020 which allows an action against an employer for intentional injury to the employee, and the conclusion that the exclusivity provisions do not provide employer immunity because outrageous conduct is too tenuous in relation to the underlying injury. *Wolf*, at 677.

 Of course, the fact of discharge alone is not sufficient to support a claim of outrage. *Dicomes v. State*, 113 Wn.2d 612, 630, 782 P.2d 1002 (1989). "It is the manner in which a discharge is accomplished that might constitute outrageous conduct." *Dicomes*, at 630. That conduct must satisfy "[t]he basic elements of the tort of outrage [which] are: '(1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) actual result to the plaintiff of severe emotional distress.'" *Dicomes*, at 630 (quoting *Rice v. Jancovich*, 109 Wn.2d 48, 61, 742 P.2d 1230 (1987); Restatement (Second) of Torts § 46 (1965)). The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." (Italics omitted.) *Grimsby v. Samson*, 85 Wn.2d 52, 59, 530 P.2d 291, 77 A.L.R.3d 436 (1975).

We hold that whether a worker proceeds with an action under RCW 51.48.025 or an independent tort action for wrongful discharge, he or she may have a cause of action for the tort of outrage. Put another way, the statute does not preclude a tort of outrage claim.

The parties appear to want this court to determine whether plaintiffs' complaint sufficiently alleges facts supporting the tort of outrage claims. However, the federal court did not certify that question to this court, and it is clearly within the province of the federal court. As noted in the statement of Wilmot's case, the ruling on the motion to dismiss for failure to state a claim for relief, Fed. R. Civ. P. 12(b)(6), has been reserved pending this court's answers to the certified questions. "Federal law governs whether a

complaint in Federal court states a claim for relief." 5A C. Wright & A. Miller, *Federal Practice* § 1357 (2d ed. 1990); *Church of Scientology v. Flynn*, 744 F.2d 694, 696 n.2 (9th Cir. 1984) (but if question concerns sufficiency of state law claim, state standard is relevant to federal court's inquiry); *see Cleland v. Stadt*, 670 F. Supp. 814, 816 (N.D. Ill. 1987); *United States v. Cisco Aircraft, Inc.*, 54 F.R.D. 181, 182 (D. Mont. 1972).

Our opinion answering the local law questions submitted by the federal court shall be forwarded to the federal court. The Court of Appeals is reversed in Moran's case, and the case is remanded for further proceedings consistent with our analysis herein.

DORE, C.J., and UTTER, DOLLIVER, ANDERSEN, DURHAM, SMITH, and JOHNSON, JJ., concur.