**UNITED STATES COURT OF APPEALS**
**Tenth Circuit**
**Byron White United States Courthouse**
**1823 Stout Street**
**Denver, Colorado 80294**
**(303) 844-3157**

Patrick J. Fisher, Jr.                                                                          Elisabeth A. Shumaker
Clerk                                                                                             Chief Deputy Clerk

February 8, 2000


**TO:** ALL RECIPIENTS OF THE OPINION

**RE:** 98-4090; Barela v. C.R. England & Sons
Filed on December 21, 1999


Please be advised of the following correction to the captioned decision.

The correction is a small fragment of a sentence that begins the first paragraph in section "V. Conclusion." Please insert that portion of the sentence indicated in brackets, however, omit the brackets.

V. Conclusion

[Within the framework of summary judgment, accepting all of his allegations as true] Barela has satisfied the first three...

A copy of the corrected page 11 is attached for your convenience.


Sincerely,

Patrick Fisher, Clerk of Court


By:    Theresa Smith
Deputy Clerk

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 21 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

BUD F. BARELA,

      Plaintiff - Appellant,

    v.

C.R. ENGLAND & SONS, INC., a
Utah Corporation,

      Defendant - Appellee.

No. 98-4090

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D. Ct. No. 95-C-693-S)**

---

Stuart H. Schultz (Glenn C. Hanni and David R. Nielson, with him on the briefs),
Strong & Hanni, Salt Lake City, Utah, appearing for Plaintiff-Appellant.

Alan E. Epstein, Hall & Evans, L.L.C., Denver, Colorado (Daniel R. Satriana, Jr.,
Hall & Evans, L.L.C., Denver, Colorado, and Nathan R. Hyde, Law Offices of
Nathan R. Hyde, Sandy, Utah, with him on the brief), appearing for Defendant-
Appellee.

---

Before **TACHA**, **KELLY**, Circuit Judges, and **WEST**,[*] District Judge.

---

**TACHA**, Circuit Judge.

      Plaintiff Barela sued defendant C.R. England & Sons, Inc. ("England") for,

---

[*]The Honorable Lee R. West, Senior District Judge for the Western District
of Oklahoma, sitting by designation.

inter alia, wrongful discharge in contravention of Utah public policy. The district court granted England's motion for summary judgment, and Barela appealed to this court. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and reverse.

## I. Facts

Barela joined England as a truck driver in December of 1993. By late spring of 1994, he had assumed the position of truck instructor in England's driver training program. Numerous students praised Barela's performance as an instructor. Supervisors and a company publication recognized Barela's success with the students. There is no evidence in the record of any problem with Barela's work until the two-to-three week period preceding his discharge.

Between June and November of 1994, some of Barela's students asked him how it was possible for them to earn the annual pay and time off that they claimed England had promised in connection with their recruitment. In helping these students to "do the math," Barela found that given their pay rates and state and federal drive-time regulations, it was impossible. There is evidence in the record that England employees were encouraged to drive in excess of the law. Barela advised his students that they could not legally earn what they told him they had been promised, but also told them that England was a great place to work.

On November 4, 1994, England conducted a "Safety Summit" meeting to facilitate company "brain storming" on accident reduction. Barela raised

concerns at the meeting based on his students' questions. Plaintiff and defendant dispute the tenor of Barela's comments. However, it is undisputed that Barela challenged England's personnel practices and that at least one supervisor responded negatively. Immediately following the meeting, England's vice president of operations instructed Barela's supervisor, Gary Thompson, to investigate Barela.

On November 7, Thompson called Barela into his office to discuss the Safety Summit meeting. He instructed Barela not to answer student questions about earning and time-off potential and criticized Barela for undermining the company's goals.

Three weeks after the meeting in Thompson's office, Thompson terminated Barela. England alleged to the district court that it terminated Barela because he was caught reading a newspaper and balancing his checkbook during work hours. The record indicates that England did not offer this reason to Barela or enforce a policy against such activities prior to Barela's discharge.

## II. Standard of Review

"We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court." Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326

(10th Cir. 1999). Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party. Simms, 165 F.3d at 1326.

**III. Utah's Public Policy Exception to the Employment-at-Will Doctrine**

Absent a contractual term of duration, Utah law presumes the employment relation to be at-will. Ryan v. Dan's Food Stores, Inc., 972 P.2d 395, 400 (Utah 1998). "An at-will employment arrangement allows either the employer or the employee to terminate the employment for any reason, or no reason at all, at any time . . . ." Id. However, an employee may overcome the at-will presumption by showing that his termination violates public policy. Id. In Heslop v. Bank of Utah, 839 P.2d 828, 837 (Utah 1992), the Utah Supreme Court stated that

> a public policy claim generally poses three questions:
> (1) Does the plaintiff's termination implicate a clear
> and substantial public policy? (2) Did the employer
> violate this public policy by requiring the employee to
> engage in conduct violating the policy or by punishing
> conduct furthering the policy? (3) Was violation of
> this public policy a substantial factor in the plaintiff's
> termination?

The plaintiff in Heslop urged his employer to correct violations of the Utah Financial Institutions Act, and his employer eventually fired him. Id. at 831-35.

- 4 -

The Heslop court first found that the plaintiff had alleged a violation of a clear and substantial public policy because the statute at issue ensured the safety of Utah financial institutions and protected the public. Id. at 837. Second, the court found that the plaintiff "acted in furtherance" of that public policy when "he vocally insisted on adherence to [Utah law]." Id. The court noted that it was not necessary for the plaintiff to report his employer's violations to public authorities in order to satisfy the second element of the test. Id. at 838. The plaintiff "pursued all internal methods for resolving the problem" and did not need to go "outside the [company] to try to correct the policy violation." Id.

In Fox v. MCI Communications Corp., 931 P.2d 857, 858 (Utah 1997), the plaintiff's employer terminated her after she reported to her employer that other employees were violating a Utah statute. The Utah Supreme Court stated that "if an employee reports a criminal violation to an employer, rather than to public authorities, and is fired for making such reports, that does not . . . contravene a clear and substantial public policy." Id. at 861. The court then held that the plaintiff had not stated a public policy claim because the employees' conduct harmed only the company itself and the company knew about the conduct and acquiesced in it. Id. Thus, "[n]othing in this case affect[ed] the public interest in any significant way." Id.

In Ryan, the plaintiff acted overzealously to "enforce" a statute prohibiting

pharmacists from knowingly filling improper prescriptions. 972 P.2d at 399-400, 407. Plaintiff went beyond the statute's requirements by mistreating and deceiving customers. Id. at 399, 410. As a result, many customers complained. Id. at 399. Management repeatedly counseled and warned the plaintiff about the complaints, but the president of the company also complimented the plaintiff on his thoroughness in detecting fraudulent prescriptions. Id. at 400. Ultimately, the company terminated the plaintiff for his treatment of customers. Id.

The Ryan court "recast the standard applied" in previous public policy cases "to make analytical clarity and procedural regularity more easily achievable by bench and bar." Id. at 404 n.3. However, the court "d[id] not change the substantive law regarding discharges in violation of public policy." Id. Under Ryan, plaintiff bears the initial burden of establishing a prima facie case of wrongful discharge in violation of public policy. Id. at 404 (citing, inter alia, Wilmot v. Kaiser Alum. & Chem. Corp., 821 P.2d 18, 28-29 (Wash. 1991)). The burden then shifts to defendant to provide a "legitimate" reason for plaintiff's discharge. Id. at 405 (citing Wilmot, 821 P.2d at 29). If defendant succeeds, the burden shifts once more to plaintiff to show that his protected conduct was a "substantial factor" in his discharge. Id. (citing Wilmot, 821 P.2d at 30).[1]

---

[1]If the plaintiff establishes a prima facie case then, at the second stage, "the employer must articulate a legitimate nonpretextual nonretaliatory reason for the discharge." Wilmot, 821 P.2d at 29. "The employer must produce relevant

To establish a prima facie case of wrongful termination in violation of public policy, an employee must show

> (i) that his employer terminated him; (ii) that a clear and substantial public policy existed; (iii) that the employee's conduct brought the policy into play; and (iv) that the discharge and the conduct bringing the policy into play are causally connected.

Id. at 404 (footnote omitted). It was undisputed in Ryan that the plaintiff was terminated, and the court found that clear and substantial public policies existed. Id. at 405, 408. The court further found that Ryan brought the public policies into play when he "questioned prescriptions [that Utah law] required him to question" and "reported suspected criminal activity to the police." Id. at 409.

Citing to Fox and Heslop, the Ryan court noted that "determining what employee conduct implicates or furthers a clear and substantial public policy is a still-developing inquiry." Id. at 408.[2] The court recognized that while "Fox

---

admissible evidence of another motivation, but need not do so by the preponderance of the evidence necessary to sustain the burden of persuasion, because the employer does not have that burden." Id. If the employer produces some evidence of a legitimate basis for the discharge, then the burden shifts back to the plaintiff. Id. at 29-30. At the third stage, the plaintiff bears the burden of persuasion and must prove by a preponderance of the evidence that retaliation was a substantial or important factor motivating the discharge. See id. at 30-31.

[2]We note that the Utah Supreme Court recently granted certiorari in a public policy case. Rackley v. Fairview Care Ctrs., Inc., 970 P.2d 277, 282 (Utah Ct. App. 1998), cert. granted, 982 P.2d 87 (1999) (finding that the plaintiff had not established a prima facie case of wrongful discharge in violation of public policy because none of the statutes cited to the court expressed a relevant clear and substantial public policy); id at 283 (Greenwood, J., concurring) (concluding

suggests that internal reporting does not implicate a clear and substantial public policy," <u>Heslop</u> implies that "any internal reporting will support a wrongful discharge claim." <u>Id.</u> at 408 n.7. The court resolved the apparent conflict between <u>Fox</u> and <u>Heslop</u> by "emphasiz[ing] that only internal reporting that furthers a clear and substantial public policy will satisfy the third element of a wrongful discharge claim." <u>Id.</u>

### IV.  Barela's Case

When the district court granted England's motion for summary judgment, the Utah Supreme Court had not yet decided <u>Ryan</u>. Consequently, the district court concluded that Barela's wrongful discharge claim must fail because he could not satisfy the first element of the <u>Heslop</u> test – that his termination implicated a clear and substantial public policy. The district court found that Barela had alleged a violation of clear and substantial public policies promoting safe roads, 49 C.F.R. § 395.3(a) (1998); Utah Code Ann. § 72-9-301 (Supp. 1999), and deterring fraud, Utah Code Ann. § 76-10-1801(1) (Supp. 1999). Relying in part on <u>Fox</u>, however, the district court ruled that Barela's conduct implicated the private concerns of England rather than the public policies he cited

---

that a clear and substantial public policy did exist, but under <u>Ryan</u> the plaintiff did not bring the policy into play because she did not report a co-worker's statutory violation to her employer and she did not contact public authorities until after she was fired).

to the court. Accordingly, the district court held that Barela's termination did not fall within the public policy exception to Utah's employment-at-will doctrine.

We must apply "the most recent statement of [Utah] law by [Utah's] highest court." Wood v. Eli Lilly & Co., 38 F.3d 510, 513 (10th Cir. 1994). Therefore, we must evaluate Barela's claim under Ryan despite the fact that the district court did not have the benefit of that opinion. For the purposes of summary judgment, England concedes that it fired Barela and that Barela has alleged violations of clear and substantial public policies. Thus, we find that Barela has satisfied the first two elements of a prima facie case of wrongful discharge in contravention of public policy.

In light of the Ryan court's resolution of the apparent conflict between Heslop and Fox, we further find that Barela has established the third element of the Ryan prima facie test. The third element requires an employee to show that his conduct brought a public policy into play. Ryan, 972 P.2d at 404. In Ryan, the Utah Supreme Court made it clear that an employee need not report a public policy violation to public authorities in order to further the policy or bring the policy into play. Internal reporting alone will satisfy the third element of a wrongful discharge claim as long as it furthers a clear and substantial public policy. Ryan, 972 P.2d at 408 n.7. In other words, internal reporting alone is sufficient to bring a public policy into play when an employer's violation of the

policy at issue is detrimental to the public interest.

The plaintiff in Fox did not further a public policy when she reported to her employer that other employees were violating Utah law because the employees' conduct harmed only the company and did not affect the public interest in any way. 931 P.2d at 861. In contrast, the plaintiff in Heslop furthered a public policy when he urged his employer to comply with a law that ensured the safety of Utah financial institutions and protected the public. 839 P.2d at 837-838. Similarly, the plaintiff in Ryan brought public policies into play when he engaged in conduct that furthered the public interest: questioning drug prescriptions that Utah law required him to question and reporting suspected criminal activity to the police. See 972 P.2d at 409.

The district court found that Barela's conduct, like the conduct of the plaintiff in Fox, implicated only the private interests of England. We disagree. At the Safety Summit meeting, Barela raised concerns based on his students' questions about the annual pay and time off they claimed England had promised them. Barela knew that the students could only earn the promised pay and time off if they violated state and federal regulations. Barela challenged England's personnel practices and at least one supervisor responded negatively. England then investigated Barela, instructed him not to answer student questions about earning and time off potential, and criticized him for undermining the company's

goals. Shortly thereafter, England fired Barela.

There is no question that Barela only objected internally to England's practices; he did not report England's activity to public authorities. However, like the plaintiffs' conduct in <u>Heslop</u> and <u>Ryan</u>, Barela's conduct implicated policies that indisputably affect the public interest: promoting safe roads and deterring fraud. Thus, we hold that Barela brought clear and substantial public policies into play and has therefore met the third element of the <u>Ryan</u> prima facie test.

**V. Conclusion**

Within the framework of summary judgment, accepting all of his allegations as true Barela has satisfied the first three elements of a prima facie case of wrongful termination in violation of public policy. Thus, we reverse and remand this case for the district court to determine whether Barela can establish the fourth element of the <u>Ryan</u> prima facie test, <u>i.e.</u>, whether the discharge and Barela's conduct are causally connected. <u>See Ryan</u>, 972 P.2d at 404. If the district court finds that Barela has satisfied the fourth element, then the district court must determine whether England can articulate a legitimate reason for Barela's discharge. <u>See id.</u> at 405 (citing <u>Wilmot v. Kaiser Alum. & Chem. Corp.</u>, 821 P.2d 18, 29 (Wash. 1991)). If England succeeds in articulating a valid reason for Barela's discharge, then Barela must show that his conduct was a

"substantial factor" in his discharge.  See id. (citing Wilmot, 821 P.2d at 30).

REVERSED and REMANDED.