972 P.2d 453 (1999)
137 Wash.2d 450
Lucille B. WARNEK and Michael D. Ocampo, Plaintiffs,
v.
ABB COMBUSTION ENGINEERING, SERVICES, INC., a/k/a ABB C-E Services, Inc., Defendant.
No. 66696-2.
Supreme Court of Washington, En Banc.
Argued November 18, 1998.
Decided March 4, 1999.
Jayne Lyn Freeman, Seattle, Amicus Curiae on behalf of Washington Defense Trial Lawyers.
Debra L. Stephens, Harbough & Bloom, Gary N. Bloom, Bryan P. Harnetiaux, Spokane, Amicus Curiae on behalf of Washington State Trial Lawyers Assoc.
Lukins & Annis, Thomas T. Bassett, Michael G. Black, Spokane, for Defendant.
Fred O. Montoya, Spokane, for Plaintiffs.
SMITH, J.
The United States District Court for the Eastern District of Washington, the Honorable Robert H. Whaley, certified two questions of law relating to refusal by Defendant ABB Combustion Engineering Services, Inc. to hire Plaintiffs in the State of Washington *454 because they made claims for workers' compensation benefits during previous employment with Defendant in the State of Colorado. We accepted certification under chapter 2.60 RCW. Each question can be answered "yes" or "no." We answer "no" to both.

STATEMENT OF FACTS[1]
Plaintiffs Lucille B. Warnek and Michael D. Ocampo are Washington residents and members of the International Brotherhood of Boilermakers (Union). They had been hired by Defendant, ABB Combustion Engineering Services, Inc., a/k/a ABB C-E Services, Inc., in the past under a collective bargaining agreement between Defendant and the Union. Defendant's jobs were located in several Midwestern and Western states, including Washington. In May 1997 Plaintiffs were employed by Defendant in the State of Colorado where they claimed to have suffered work-related injuries. They filed for workers' compensation benefits under Colorado's workers' compensation laws and were subsequently laid off from their jobs in Colorado by Defendant.
In July 1997, upon being cleared for full work duty by a physician, Plaintiffs were given job assignments by the Union to a construction job Defendant had won in Longview, Washington. Defendant rejected Plaintiffs for this assignment, asserting that their Colorado workers' compensation claims were fraudulent. Plaintiffs dispute this assertion. According to Defendant, Plaintiffs were placed on its "do not hire" list under terms of its collective bargaining agreement with the Union.
In August 1997 Plaintiffs filed an action in the United States District Court for the Eastern District of Washington under the diversity of citizenship provisions of 28 U.S.C. § 1332.[2] Their complaint asserted that Defendant's conduct constituted discrimination and/or retaliation in violation of RCW 51.48.025(1) and (2).[3]
In December 1997 Defendant filed a motion for summary judgment in the United States District Court asserting that "(1) Plaintiffs had no right to be hired apart from any right granted in the collective bargaining agreement, which could not form the basis of their state law claim because of federal preemption; and (2) Plaintiffs' claims fall outside the scope of Washington's statutory cause of action for violations of Wash. Rev.Code §51.48.025 and the related common law tort cause of action described in Wilmot v. Kaiser Alum. & Chem. Corp., 118 Wash.2d 46, 821 P.2d 18 (1991) and its progeny."[4]
The United States District Court denied the motion, ruling that (1) Plaintiffs' claims were not preempted by federal law because, inter alia, the cause of action recognized in Wilmot extends to refusals to hire if the refusal is retaliation for the filing of a workers' compensation grievance; and (2) if the discriminatory act occurs in Washington, it is actionable under Washington law even if the workers' compensation claim is filed pursuant to another state's workers' compensation scheme.[5]
In February 1998 Defendant filed in the District Court a motion for reconsideration and/or certification to the Supreme Court of Washington. The motion claimed (1) the Washington Industrial Insurance Act does not provide a statutory remedy; (2) there is no recognized claim for wrongful failure to hire absent a statutory directive; (3) there is a right to be hired only under the collective bargaining agreement and claims based upon the collective bargaining agreement are preempted; and (4) certification to the *455 Washington Supreme Court is appropriate if the court does not grant summary judgment.[6]
On April 13, 1998 the United States District Court granted Defendant's request for certification of controlling state law issues to the Supreme Court of Washington.[7] The motion for reconsideration was denied with leave to renew upon receipt of determination whether the Supreme Court of Washington accepted certification of the issues.[8] We accepted certification on April 21, 1998.

FIRST CERTIFIED QUESTION
The first question certified by the United States District Court is "Do either of the causes of action described by Wash. Rev. Code §51.48.025 and Wilmot v. Kaiser Alum. & Chem. Corp., 118 Wash.2d 46, 821 P.2d 18 (1991) encompass a former employee who is not rehired because the former employee filed a workers' compensation grievance during the course of previous employment with the employer?"[9] We answer the question "No."
A former employee not rehired because the employee filed a workers' compensation grievance during the course of previous employment with the employer may not initiate a lawsuit for employment discrimination based upon wrongful discharge under RCW 51.48.025 or the wrongful discharge cause of action articulated in Wilmot v. Kaiser Aluminum & Chem. Corp., 118 Wash.2d 46, 821 P.2d 18 (1991).
RCW 51.48.025 reads:
(1) No employer may discharge or in any manner discriminate against any employee because such employee has filed or communicated to the employer an intent to file a claim for compensation or exercises any rights provided under this title. However, nothing in this section prevents an employer from taking any action against a worker for other reasons including, but not limited to, the worker's failure to observe health or safety standards adopted by the employer, or the frequency or nature of the worker's job-related accidents.
(2) Any employee who believes that he or she has been discharged or otherwise discriminated against by an employer in violation of this section may file a complaint with the director alleging discrimination within ninety days of the date of the alleged violation. Upon receipt of such complaint, the director shall cause an investigation to be made as the director deems appropriate. Within ninety days of the receipt of a complaint filed under this section, the director shall notify the complainant of his or her determination. If upon such investigation, it is determined that this section has been violated, the director shall bring an action in the superior court of the county in which the violation is alleged to have occurred.
(3) If the director determines that this section has not been violated, the employee may institute the action on his or her own behalf.
(4) In any action brought under this section, the superior court shall have jurisdiction, for cause shown, to restrain violations of subsection (1) of this section and to order all appropriate relief including rehiring or reinstatement of the employee with back pay.
Under RCW 51.48.025(2) an aggrieved employee "may" file a complaint with the Director of Industrial Insurance "within ninety days of the date of the alleged violation." The Director then "shall cause an investigation to be made" as the Director considers appropriate. Within ninety days after receipt of the complaint the Director "shall notify the complainant of [the Director's] determination." If, upon investigation a violation of RCW 51.48.025(1) has occurred, the Director then "shall bring an action in the superior court of the county in which the violation is alleged to have occurred." Under RCW 51.48.025(3), "the employee may institute *456 the action on [the employee's] own behalf."[10]
Under RCW 51.48.025 an employee may file a complaint for wrongful discharge if the employee has been discharged or otherwise discriminated against by an employer because the employee applied for workers' compensation benefits under the Washington Industrial Insurance Act, Title 51 RCW. Plaintiffs Warnek and Ocampo would interpret the statute as providing for complaints by ex-employees and former employees not rehired for employment because they filed for workers' compensation benefits during prior employment with the employer in another state.[11] This interpretation is similar to the "bad faith" exception to the employment at will doctrine which this Court rejected because it did not properly balance the interest of an employer in running a business against the interest of an employee in maintaining employment.[12] The statute by its plain language does not apply as Plaintiffs suggest, but expressly provides for complaints by employees who have been discharged or otherwise discriminated against during the course of their employment. This evidences a legislative intent not to provide protection under the statute to former employees who have not been rehired because they filed for workers' compensation benefits in the past.[13] To reach a contrary conclusion would go beyond the statute's clear and unambiguous language[14] resulting in this Court inappropriately "read[ing] into a statute matters which are not there."[15]
Neither Wilmot v. Kaiser Aluminum & Chem. Corp.[16] nor the wrongful discharge requirements subsequently adopted in Gardner v. Loomis Armored, Inc.[17] provide a cause of action for a former employee who is not rehired because the former employee filed a workers' compensation grievance during the course of prior employment with the employer in another state. The causes of action articulated in Wilmot[18] and Gardner[19] require that an actual employee be discharged from employment in order to establish an action for wrongful discharge.[20] Plaintiffs under the limited facts in this case cannot meet that requirement. There is a distinction between discharge or other discrimination during the course of employment and not being rehired for new employment.
Plaintiffs also cannot establish that a clear mandate of public policy has been violated.[21]
*457 In denying Defendant's motion for summary judgment, the United States District Court interpreted Johnson v. Safeway Stores, Inc.[22] as "extending Wilmot to include former employee's claim that employer coerced employee into not filing workers compensation claim."[23] Although that is correct to a degree, Johnson is more correctly characterized as holding that "an employee has a cause of action in tort if ... [an] employer successfully prevents the filing of a workers' compensation claim by threats and intimidation."[24] There is no evidence on the limited record before us that that has occurred in this case.

SECOND CERTIFIED QUESTION
The second question certified by the United States District Court is "Do either of the causes of action described by Wash. Rev. Code §51.48.025 and Wilmot v. Kaiser Alum. & Chem. Corp., 118 Wash.2d 46, 821 P.2d 18 (1991) extend to employment discrimination as to employment in the State of Washington where that discrimination is motivated by the filing of a workers' compensation claim pursuant to another state's workers' compensation scheme?"[25] We answer the question "No."
"Employment discrimination" may be manifest in many different ways,[26] but in answering this question we limit its application to wrongful discharge.
Plaintiffs have interpreted RCW 51.48.025 to indicate (1) the statute on its face does not specifically require a filing for benefits with the Washington State Department of Labor and Industries in order to come within the protection of the statute;[27] and (2) the language of the statute does not specifically limit "employer" to an employer in the state of Washington.[28]
Plaintiffs' interpretation is not correct. RCW 51.48.025 makes no provision for complaints by employees claiming wrongful discharge based upon their filing for workers' compensation benefits under the laws of another state as asserted by Plaintiffs, although it conceivably would allow complaints by employees claiming wrongful discharge or discrimination because they have filed for workers' compensation benefits in the State of Washington. We are satisfied the wording of the statute evidences a legislative intent not to include in the protected class under RCW 51.48.025 employees who file for workers' compensation benefits in another state.[29]
Plaintiffs are in error in their interpretation of "employer." The word "employers" in RCW 51.48.025 refers only to employers in the State of Washington[30] and does not include employers outside the state.[31]
Plaintiffs cite Marquis v. Spokane[32] and *458 Burnside v. Simpson Paper Co.[33] to support their interpretation of RCW 51.48.025. Those cases are not authority under the facts of this case. The statutes involved in those cases, RCW 49.60.030 and RCW 49.60.010, are codified under chapter 49.60, the "law against discrimination,"[34] which, under RCW 49.60.020, provides that the chapter "shall be construed liberally for the accomplishment of... [its] purposes." There is no similar provision in Title 51 RCW. In fact Title 51 RCW by its wording suggests a narrow construction,[35] but this Court has determined it should be liberally construed.[36]
Under the limited facts stated in these certified questions, an employee may not initiate a lawsuit under the wrongful discharge cause of action articulated in Wilmot. Wrongful discharge is generally allowed under four circumstances: "(1) where employees are fired for refusing to commit an illegal act; (2) where employees are fired for performing a public duty or obligation, such as serving jury duty; (3) where employees are fired for exercising a legal right or privilege, such as filing workers' compensation claims; and (4) where employees are fired in retaliation for reporting employer misconduct, i.e., whistleblowing."[37]
Even assuming Plaintiffs under the facts of this case have standing to sue under chapter 49.60 RCW, they would at best fall into category (3) (employees fired for exercising a legal right or privilege, such as filing workers' compensation claims).[38] They do not meet the wrongful discharge requirements articulated in Wilmot.[39] Simply stated, Plaintiffs have not been "fired" or "discharged." They are merely former employees who were not rehired. Although Plaintiffs filed for workers' compensation benefits in the State of Colorado during the course of their prior employment by Defendant in that state, they are not current employees who have been fired, nor have they otherwise exercised, or communicated an intent to exercise, a right covered under Title 51 RCW.[40] Discharge during the course of employment and not being rehired for new employment are two distinctly different circumstances. Because Plaintiffs are not current employees, but are former employees who have been refused rehiring, they also do not satisfy the wrongful discharge requirements articulated in Gardner.
There are not sufficient facts before us on the certified questions to determine whether conceivably Gardner might provide a cause of action for wrongful discharge or discrimination based upon the filing by an employee for workers' compensation benefits under the laws of another state if the employee is "fired" or discharged in this state for that reason. But the limited facts before us in this case do not justify discussion of that issue.

PRE-EMPTION
Defendant argues in its brief that Plaintiffs' case is pre-empted by federal law.[41] Plaintiffs answer to the contrary.[42] Because the question of pre-emption was not included in the certified questions, we will not address it in this opinion.

*459 SUMMARY AND CONCLUSION
A former employee not rehired in the State of Washington because the employee filed a workers' compensation grievance during the course of previous employment with the employer in another state is not entitled to file a lawsuit for employment discrimination based upon wrongful discharge under RCW 51.48.025 or Wilmot.
An employee may not commence a lawsuit for employment discrimination based upon wrongful discharge under RCW 51.48.025 or Wilmot when discharge in the State of Washington is motivated by the filing by the employee of a workers' compensation claim under another state's workers' compensation scheme.
For the reasons stated in this opinion, we answer "no" to both questions certified from the United States District Court for the Eastern District of Washington.
GUY, C.J., ALEXANDER, SANDERS, JJ., and DOLLIVER, J.P.T., concur.
MADSEN, J., concurring/dissenting.
I agree with the majority that Warnek and Ocampo have failed to state a cause of action under RCW 51.48.025.
However, the circumstances of Warnek's and Ocampo's union employment situation are such that they have routinely though intermittently worked for the same employer. If the cause of action afforded under Wilmot v. Kaiser Aluminum & Chem. Corp., 118 Wash.2d 46, 821 P.2d 18 (1991) to employees against employers who retaliate for asserting workers' compensation rights does not apply here, as the majority concludes, then a significant class of employees are without remedy for such retaliation. Such a result in contrary to the strong public policy of protecting workers who exercise their rights under the quid pro quo of the workers' compensation scheme. Therefore, I agree with the dissent that the existence of a long-term, recurring employment relationship is sufficient to bring plaintiffs within the class of employees entitled to maintain a cause of action under Wilmot, provided they can otherwise make out the prima facie case for the cause of action.
TALMADGE, J., concurring/dissenting.
The majority correctly determines Lucille Warnek and Michael Ocampo have failed to state a claim under RCW 51.48.025. But the majority too narrowly interprets the common law cause of action created by Wilmot v. Kaiser Aluminum & Chem. Corp., 118 Wash.2d 46, 821 P.2d 18 (1991). Under Wilmot, a worker presents a prima facie common law cause of action for wrongful discharge in violation of public policy if the worker's discharge in the State of Washington is motivated by that worker's filing of a Washington industrial insurance claim. Identical public policy considerations apply when an employer retaliates against a worker for filing a worker compensation claim under the law of another jurisdiction. The majority's analysis of Wilmot fails to account for the reality of multistate employment and runs counter to the public policy generally expressed by the Legislature in RCW 51.48.025. For these reasons, I respectfully dissent.
Although we have a limited factual pattern because this is a certified federal question, the facts available to us are significant to our analysis. Warnek and Ocampo are members of the International Brotherhood of Boilermakers (the Union). Both previously had worked for ABB Combustion Engineering Services, Inc. (ABB) in a variety of ABB projects around the United States. Pursuant to the collective bargaining agreement between ABB and the Union, boilermakers are referred by the Union to projects operated by ABB where and when boilermakers are needed. The collective bargaining agreement allows ABB the right to reject any *460 union member sent to an ABB project. In oral argument, ABB contended this right to reject, described as a "do not hire" list, is confined to a maximum of one year. ABB further argued Warnek and Ocampo were on its "do not hire" list for only a three month period. By contrast, counsel for Warnek and Ocampo in oral argument contended ABB advised Warnek and Ocampo by letter they would never hire them back and there was no limitation to the duration of one's placement on the "do not hire" list.[1]
In this case, Warnek and Ocampo were sent to an ABB Colorado project where they were allegedly injured on the job. They filed worker compensation insurance claims in Colorado and were laid off by ABB after being medically cleared to return to work. ABB now contends these claims were fraudulent, but the record is silent as to whether ABB raised this issue in Colorado and as to the outcome of Warnek and Ocampo's claims in Colorado. Subsequently, the Union sent Warnek and Ocampo to an ABB project in Longview, Washington. ABB refused to permit them to work, indicating in July 17, 1997 and July 23, 1997 letters, they were ineligible for "rehire" at least in part as a result of having filed fraudulent claims.[2]
As previously noted, the majority is correct in holding Warnek and Ocampo have not stated a claim under the specific provisions of RCW 51.48.025. For a worker to state a cause of action under that statute, the alleged retaliation must have resulted from an employee's filing a claim for benefits under Title 51 RCW, Washington's Industrial Insurance Act. As Warnek and Ocampo did not file a claim for benefits under Title 51 RCW in this case, they have no action under RCW 51.48.025. However, that does not fully answer the federal court's certified questions.
In Wilmot (again in answer to a question from the United States District Court for the Eastern District of Washington), we specifically concluded RCW 51.48.025 is not an exclusive remedy. Independent of the statute, a worker may file a tort claim for wrongful discharge based on allegations the employer discharged the worker in retaliation for having filed or expressed an intent to file a worker compensation claim. Wilmot, 118 Wash.2d at 52, 821 P.2d 18. As we concluded:
Even without RCW 51.48.025, we would acknowledge existence of a clear mandate of public policy against retaliatory discharge of employees for pursuing workers' compensation benefits and allow a tort cause of action for wrongful discharge, as have a number of other jurisdictions.
Wilmot, 118 Wash.2d at 54, 821 P.2d 18. We described the common law cause of action as follows:
The first step, therefore, is for plaintiff to make out a prima facie case for retaliatory discharge. To do this, plaintiff must show (1) that he or she exercised the statutory right to pursue workers' benefits under RCW Title 51 or communicated to the employer an intent to do so or exercised any other right under RCW Title 51; (2) that he or she was discharged; and (3) that there is a causal connection between the exercise of the legal right and the discharge, i.e., that the employer's motivation for the discharge was the employee's exercise of or intent to exercise the statutory rights.
Wilmot, 118 Wash.2d at 68-69, 821 P.2d 18.
The majority believes the common law cause of action for retaliatory discharge is not established in this case because Warnek and Ocampo received benefits in Colorado, not Washington. The majority also notes they were not ABB employees at the time they were the subject of any retaliation so that this was not a case of retaliatory discharge but a retaliatory refusal to hire. The majority declines to apply the common law *461 cause of action under Wilmot to retaliatory failure to hire. The majority is incorrect on both grounds.
Initially, the parties do not dispute that Warnek and Ocampo have presented at least a prima facie case of retaliation. ABB essentially admits as much. ABB has candidly admitted it did not allow them to work at Longview because of their disability claim in Colorado. ABB's District Manager said in a declaration in the federal district court, "Because of the situation that occurred in the State of Colorado, ABB determined that it did not wish to employ Ms. Warnek or Mr. Ocampo on other jobs." Decl. of Austin Ballou at 2. In other words, ABB terminated the recurring employment relationship with Warnek and Ocampo because they filed worker compensation claims in Colorado.
As to the majority's first issue, the policy expressed in RCW 51.48.025 and in Wilmot is not so narrowly confined to Washington industrial insurance benefits as the majority suggests. In our modern economic system, workers are mobile, working in a number of jurisdictions, often for the same employer.[3] We can certainly take cognizance of the fact a number of workers in Washington may be employed in neighboring states. For example, it is common for workers in southwest Washington to drive across the Columbia River and work in the Portland metropolitan area. It is also common for workers of multistate corporations like the Boeing Company to work at a number of its facilities around the United States, and perhaps even around the world.
There is no principled basis for differentiating between the presentation of a worker compensation claim in another state or under the law of another jurisdiction (e.g., Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901-950) and the presentation of a claim under Title RCW 51 for purposes of a common law cause of action for retaliatory discharge in violation of public policy. If a worker submits a legitimate industrial insurance claim in another jurisdiction and an employer in Washington discriminates against that worker for submission of such a claim, Washington public policy is offended. The broad public policy of Washington law expressed in RCW 51.48.025 and Wilmot exists to forestall discrimination against workers based on the presentation of legitimate worker compensation claims for on-the-job injuries, wherever those injuries may occur.
To hold otherwise impairs the great compromise of Washington's Industrial Insurance Act (IIA) which required workers to forego their common law rights in court in favor of a swift and certain no-fault remedy for industrial injuries. In turn, employers were the beneficiaries of immunity from suit. As we said so trenchantly in Wilmot, "The balancing of interests which the IIA represents would be intolerably undermined could an employer circumvent the act by the threat of or actual discharge of the worker, or by other discrimination contemplated by the statute." Wilmot, 118 Wash.2d at 66, 821 P.2d 18. The facts of Wilmot concerned a retaliatory discharge, but the reasoning of our decision, and the policy on which we based our holding, apply with equal force to the present situation, where the facts concern a failure to reemploy in alleged retaliation for the filing of a worker compensation claim. The vice we held compensable in Wilmot was retaliation by an employer against a worker for filing a worker compensation claim. We held such retaliation contrary to the public policy of Washington. In establishing a cause of action in this case, we would merely be applying Wilmot, not extending Wilmot.
As to the second issue raised by the majority, this is arguably a case of retaliatory discharge. We have previously expressed reluctance to extend the common law cause of action for retaliatory discharge in violation of public policy to other forms of employment discrimination. See, e.g., White v. State, 131 Wash.2d 1, 929 P.2d 396 (1997) (refusing to *462 recognize tort of wrongful transfer as against public policy).
But Warnek and Ocampo and ABB are not unknown to one another. This is not a situation where someone is seeking employment for the first time by an employer.[4] In effect, Warnek and Ocampo appear to have had a long-term employment relationship with ABB on a recurring basis. As is the practice in many other trades, Warnek and Ocampo were referred by their Union to various ABB projects around the western United States. They were not "new hires" in the ordinary sense when they were assigned to those jobs. Indeed, ABB's letter to the Union on July 17, 1997 acknowledges this ongoing relationship by referring to Warnek and Ocampo as "rehires." Warnek and Ocampo had previously worked for ABB in a variety of locales across the United States, including Idaho, Colorado, North and South Dakota, and Washington. The federal district court found Warnek and Ocampo "have been hired by Defendant in the past to work on jobs in several midwestern and western states, including Washington." Order Granting Mot. For Certifications of Issues at 1-2. Thus, while it is evident Warnek and Ocampo were not full-time employees of ABB, they ostensibly had a recurring employment relationship with ABB.
In the case of their prospective employment in Longview, Washington, they were sent to that jobsite by their Union. In the normal course, they would have worked at the ABB Longview jobsite but for ABB's decision to reject them for some period of time. Any other workers sent by the Union to the site would have been employed. In effect, ABB discharged Warnek and Ocampo by refusing to allow them to work in Longview after the Union had assigned them to that jobsite.
Even if we read the term "employee" as narrowly as the majority suggests, the term arguably applies to former employees who are the subjects of retaliation.[5] Support can be found for this position in the United States Supreme Court decision in Robinson v. Shell Oil Co., 519 U.S. 337, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). There, Shell terminated Robinson. Robinson filed an Equal Employment Opportunity Commission charge under Title VII of the Civil Rights Act of 1964. While that charge was pending, Robinson applied for a job with another employer. Shell gave Robinson a very negative reference when the prospective employer contacted it. The United States Supreme Court held that the term "employee" under Title VII of the Civil Rights Act of 1964 was sufficiently ambiguous to extend the coverage of the law to former employees like Robinson. The Court held Robinson established a prima facie case under Title VII of the Civil Rights Act when Shell gave a negative reference on him, even though he was no longer technically a Shell employee. The United States Supreme Court indicated this was consistent with the broad policy of antiretaliation articulated in the Civil Rights Act.
Moreover, it is noteworthy RCW 51.48.025 does not confine its provisions to wrongful discharge. Instead, the statute extends its *463 protection to "[a]ny employee who believes that he or she has been discharged or otherwise discriminated against by an employer in violation of this section[.]" (Emphasis added.) RCW 51.48.025(2). Thus, the public policy in Washington may well extend to discrimination beyond that which would be described as retaliatory discharge. See Johnson v. Safeway Stores, Inc., 67 Wash. App. 10, 833 P.2d 388 (1992) (employee who was denied an opportunity to file an industrial insurance claim due to threats and coercions by his manager stated a cause of action). We do not need to reach that issue here in light of the apparent ongoing relationship between Warnek and Ocampo.
The grave implication of the majority's holding is that all workers referred by a union to the same company on a recurring basis would have no recourse at common law if that company refused to employ them in retaliation for their having filed a worker compensation claim. The ambit of the public policy we announced in Wilmot surely embraces the thousands of Washington workers who are not traditional employees.[6]
In summary, I would respond to the federal court's certified questions by holding Warnek and Ocampo failed to state a cause of action under the specific terms of RCW 51.48.025. However, they could state a case under the common law cause of action articulated in Wilmot where the test for a prima facie case under Wilmot is properly understood. Warnek and Ocampo would have to demonstrate the existence of a long-term, recurring employment relationship with ABB that was terminated by ABB when they presented worker compensation claims in Colorado and those claims constituted a substantial factor in ABB's decision to end the employment relationship.[7]
The public policy of Washington is to prevent retaliation by employers against workers who present legitimate worker compensation claims under Washington law or the law of any other jurisdiction. Our public policy recognizes the importance of proper compensation of injured workers for on-the-job injuries. We should not create exceptions to this public policy simply because workers have made the claims in other jurisdictions or have been referred for work by a union.
JOHNSON and DURHAM, JJ., concur.
NOTES
[1] The Statement of Facts is principally based upon the Order Granting Motion for Certification of Issues signed by the Honorable Robert H. Whaley on April 13, 1998 (Certified Record 28). The record does not contain the collective bargaining agreement between the Union and Defendant, but was referred to by counsel for both parties during oral argument.
[2] Compl. for Damages and Jury Demand at 1 (Certified Record 1).
[3] Compl. for Damages and Jury Demand at 3 (Certified Record 1).
[4] Order Granting Mot. for Certification of Issues at 2 (Certified Record 28).
[5] Id.
[6] Mem. in Supp. of Def.'s Mot. for Recons. and/or Certification to the Washington Supreme Court (Certified Record 23).
[7] Order Granting Mot. for Certification of Issues at 3 (Certified Record 28).
[8] Id.
[9] Order Granting Mot. for Certification of Issues (Certified Record 28).
[10] There is nothing in the record submitted with the certified questions which indicates whether Plaintiff employees followed the procedure required by RCW 51.48.025 before proceeding on their own behalf. We do not express an opinion whether that procedure is required before Plaintiffs could institute their action in the United States District Court.
[11] Opposing Br. of Pls.
[12] Thompson v. St. Regis Paper Co., 102 Wash.2d 219, 227, 685 P.2d 1081 (1984).
[13] Dominick v. Christensen, 87 Wash.2d 25, 26, 548 P.2d 541 (1976) ("An expression of one thing in a statute excludes others not expressed.").
[14] Erection Co. v. Department of Labor & Indus., 121 Wash.2d 513, 518, 852 P.2d 288 (1993).
[15] Rhoad v. McLean Trucking Co., 102 Wash.2d 422, 426, 686 P.2d 483 (1984).
[16] 118 Wash.2d 46, 821 P.2d 18 (1991).
[17] 128 Wash.2d 931, 913 P.2d 377 (1996).
[18] Wilmot, 118 Wash.2d at 68, 821 P.2d 18 ("[P]laintiff must show (1) that [plaintiff] ... exercised the statutory right to pursue workers' benefits under RCW Title 51 or communicated to the employer an intent to do so or exercised any other right under RCW Title 51; (2) that [plaintiff]... was discharged; and (3) that there is a causal connection between the exercise of the legal right and the discharge.").
[19] Gardner, 128 Wash.2d at 941, 913 P.2d 377 ("[Plaintiffs] must prove the existence of a clear public policy (the clarity element) ... (2) ... that discouraging the conduct in which they engaged would jeopardize the public policy (the jeopardy element) ... (3) ... that the public-policy-linked conduct caused the dismissal (the causation element)..., and (4) [t]he defendant must not be able to offer an overriding justification for the dismissal (the absence of justification element).").
[20] Wilmot, 118 Wash.2d at 68, 821 P.2d 18 ("Plaintiff must show ... (2) that [plaintiff] ... was discharged.").
[21] Gardner, 128 Wash.2d at 945, 913 P.2d 377 ("Under the second element, the employee's discharge must jeopardize .... public policy...." Wilmot, 118 Wash.2d at 67, 821 P.2d 18 quoting Thompson v. St. Regis Paper Company, 102 Wash.2d 219, 232-33, 685 P.2d 1081 (1984). ("[A]n employee who alleges wrongful discharge in violation of public policy `has the burden of proving [the employee's] ... dismissal violates a clear mandate of public policy.'")).
[22] 67 Wash.App. 10, 833 P.2d 388 (1992).
[23] Order Den. Summ. J. and Mot. to Strike at 2 (Certified Record 21).
[24] Johnson, 67 Wash.App. at 13, 833 P.2d 388.
[25] Order Granting Mot. for Certification of Issues (Certified Record 28).
[26] Wilmot, 118 Wash.2d 46, 821 P.2d 18 (wrongful discharge); Allison v. Housing Auth., 118 Wash.2d 79, 821 P.2d 34 (1991) (retaliatory lay off); Roberts v. ARCO, 88 Wash.2d 887, 568 P.2d 764 (1977) (transfer, demotion and termination); Xieng v. People's Natl. Bank, 120 Wash.2d 512, 844 P.2d 389 (1993) (failure to promote); Reese v. Sears, Roebuck & Co., 107 Wash.2d 563, 731 P.2d 497 (1987) (failure to accommodate disability); and In re Case E-368, 65 Wash.2d 22, 395 P.2d 503 (1964) (refusal to accept employment application).
[27] Opposing Br. of Pls. at 5-6.
[28] Id. at 6.
[29] Dominick v. Christensen, 87 Wash.2d 25, 26, 548 P.2d 541 (1976)
[30] RCW 51.08.070 ("`Employer' means any person, body of persons, corporate or otherwise, and the legal representatives of a deceased employer, all while engaged in this state in any work covered by the provisions of this title [Title 51, Industrial Insurance Act]....").
[31] RCW 51.08.010 ("Unless the context indicates otherwise, words used in this title shall have the meaning given in this chapter.") [Title 51, Industrial Insurance Act].
[32] 130 Wash.2d 97, 922 P.2d 43 (1996).
[33] 66 Wash.App. 510, 832 P.2d 537 (1992), aff'd, 123 Wash.2d 93, 864 P.2d 937 (1994).
[34] The purpose of the "law against discrimination" is to prevent, eliminate and provide a remedy for discrimination based on race, creed, color, national origin, families with children, sex, marital status, age or the presence of any sensory, mental or physical disability or the use of a trained dog guide or service animal by a disabled person. Employment discrimination is included. RCW 49.60.010. See RCW 49.60.180 for unfair employment practices of employers. Plaintiffs make no claim of discrimination under the law against discrimination nor do the facts of this case suggest an issue under that law.
[35] RCW 51.04.010.
[36] See Double D Hop Ranch v. Sanchez, 133 Wash.2d 793, 798, 947 P.2d 727, 952 P.2d 590 (1997).
[37] Gardner, 128 Wash.2d at 936, 913 P.2d 377 (citing Dicomes v. State, 113 Wash.2d 612, 618, 782 P.2d 1002 (1989)).
[38] Id.
[39] 118 Wash.2d at 68, 821 P.2d 18.
[40] Id.
[41] Reply Br. of Def. at 12.
[42] Opposing Br. of Pls. at 9.
[1] The letter ABB sent to the Union regarding Warnek and Ocampo states, "ABB C-E Services has deemed these two individuals not eligible for rehire on any of our projects. Therefore, they will not be hired on our Longview Fibre Unit # 15 Project." Attach. F, Pl.'s Aff. In Opp'n to Def.'s Mot. For Summ. J. (July 17, 1997 letter).
[2] The foregoing facts appear in the United States District Court's Order Granting Mot. for Certification of Issues at 2, and in the record from the federal court.
[3] Under ER 201, we can take judicial notice that ABB Combustion Engineering Services, Inc., is a division of a $6 billion United States company that in turn is part of the global giant, ABB Group, a $31 billion company that ranks 83rd in the world on Fortune's Global 500 list of companies. See http://www.pathfinder.com/fortune/global500/500list2_51.html.
[4] Although the issue was not discussed here, even where a person was a first time applicant for employment, and such applicant had a history of on-the-job injuries resulting in disability, the applicant would have a claim under Washington's law against discrimination, RCW 49.60, against an employer that refused to hire the applicant because of physical disabilities. In fact, WAC 162-12-140, a regulation promulgated by Washington's Human Rights Commission, makes it improper for an employer to even ask an applicant about prior worker compensation claims.

We held in Reese v. Sears, Roebuck & Co., 107 Wash.2d 563, 731 P.2d 497 (1987), overruled on other grounds by Phillips v. City of Seattle, 111 Wash.2d 903, 766 P.2d 1099 (1989), that Title 51 RCW was not the exclusive remedy for a worker who had been injured on the job and then was discriminated against by the employer; the worker could state a claim under RCW 49.60 for handicap discrimination. See also Goodman v. Boeing Co., 127 Wash.2d 401, 899 P.2d 1265 (1995) (injured worker's recovery under RCW 49.60 may extend to separate physical or emotional injuries arising from the discrimination).
Washington public policy encourages the employment of previously injured workers. See RCW 51.16.120; RCW 51.32.095 (second injury fund providing incentives to employment of previously injured workers).
[5] The mere termination of an employment relationship cannot foreclose a cause of action under RCW 51.48.025(2) or the common law.
[6] Workers referred by a union are not the only workers affected by the majority's analysis. Independent contractors would also be affected (see Marquis v. City of Spokane, 130 Wash.2d 97, 922 P.2d 43 (1996) (Law Against Discrimination's reference to "employees" extends to independent contractors)), as would temporary employees (see RCW 51.16.060 (temporary help company deemed employer for industrial insurance purposes)).
[7] ABB has argued Warnek and Ocampo made fraudulent worker compensation claims in Colorado and this was the reason for their termination. As we indicated in Wilmot, such an argument could certainly be an affirmative defense by the employer to a prima facie case of retaliatory discharge in violation of public policy. In Wilmot, the employer argued the employee's discharge was not motivated by retaliation, but was the result of their chronic absenteeism. We held the chronic absenteeism argument could be raised as a defense. Wilmot, 118 Wash.2d at 75-76, 821 P.2d 18. Similarly, ABB here could assert its fraudulent worker compensation claim defense in response to a prima facie case of retaliatory discharge by the employees.