[No. 31445-2-II.  Division Two.  April 5, 2005.]

DENNIS O'KEEFE, *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES ET AL., *Respondents*.

*Terry J. Barnett* (of *Rumbaugh, Rideout & Barnett*), for appellant.

*Robert M. McKenna, Attorney General,* and *Kay A. Germiat, Assistant,* and *Terry D. Peterson,* for respondents.

¶1 ARMSTRONG, J. — Dennis O'Keefe sustained an industrial injury and began receiving time-loss compensation for a temporary total disability (TTD). He returned to a modified job with his employer of injury, but the employer fired him for disciplinary reasons. The Board of Industrial Insurance Appeals (BIIA) and the superior court affirmed the Department of Labor and Industries' (the Department) decision not to resume O'Keefe's TTD payments. O'Keefe now appeals, arguing that RCW 51.32.090(4) requires resumption of benefits. We affirm.

## FACTS

¶2 Dennis O'Keefe sustained an industrial injury on August 20, 2001, while employed as a framer by Woodinville Lumber, Inc. On October 17, the Department began paying O'Keefe TTD benefits. After O'Keefe's doctor determined that O'Keefe's disability permanently precluded him from working as a framer, Woodinville and O'Keefe's vocational counselor created a temporary light duty job. This light duty job was created for O'Keefe, but it consisted of tasks that were parts of other employees' jobs.

¶3 After his physician approved the light duty job, O'Keefe returned to work on February 11, 2002. But O'Keefe often missed some or all of his workday for dentist, doctor, daycare, or court appointments. O'Keefe worked only 14.5 hours of the 80 hours he was scheduled to work during his first two weeks. He often failed to return to work after an appointment and rarely documented his absence. O'Keefe sometimes performed time and motion studies

poorly and in the course of performing a job safety audit, he made inappropriate comments to employees of one of Woodinville's largest clients. Woodinville employees, including its superintendent, saw O'Keefe sleeping in his truck at least twice.

¶4 Woodinville warned O'Keefe that if his attendance did not improve, he would be fired. On March 11, 2002, O'Keefe told Woodinville that because of an appointment, he would not be in to work until 1:00 P.M. the next day. O'Keefe called at 1:00 P.M. the next day and said he would not be coming in to work; he refused Woodinville's request that he come to work. Because of O'Keefe's poor job attendance and other problems, Woodinville fired him on March 13. According to Woodinville, O'Keefe's light duty job would have remained available to him but for his attendance problems and inappropriate comments. The parties stipulated that O'Keefe's physician would certify him as physically capable of performing the light duty job.

¶5 The Department ended O'Keefe's time-loss compensation on April 3, 2002. He appealed to the BIIA. The BIIA affirmed the Department's order, concluding that O'Keefe was not entitled to time-loss compensation because his light duty work had not "come to an end" within the meaning of RCW 51.32.090(4)(a).[1] Certified Appeal Board Record (CABR) at 25.

---

[1] RCW 51.32.090(4)(a) provides in part:

Whenever the employer of injury requests that a worker who is entitled to temporary total disability . . . be certified by a physician . . . as able to perform available work other than his or her usual work, the employer shall furnish to the physician . . . a statement describing the work available with the employer of injury in terms that will enable the physician . . . to relate the physical activities of the job to the worker's disability. The physician . . . shall then determine whether the worker is physically able to perform the work described. The worker's temporary total disability payments shall continue until the worker is released by his or her physician . . . for the work, and begins the work with the employer of injury. *If the work thereafter comes to an end before the worker's recovery is sufficient in the judgment of his or her physician . . . to permit him or her to return to his or her usual job, or to perform other available work offered by the employer of injury, the worker's temporary total disability payments shall be resumed.*

(Emphasis added.) The parties cite to the pre-July 2004 version, which is identical in relevant part. *See* LAWS OF 2004, ch. 65, § 9.

¶6 After the BIIA affirmed its decision, O'Keefe appealed to superior court. O'Keefe and Woodinville both moved for summary judgment. Woodinville argued that O'Keefe had failed to produce evidence that he was a temporarily totally disabled worker. The court agreed, granted Woodinville's motion, and denied O'Keefe's. He now appeals.

## ANALYSIS

¶7 O'Keefe argues that the Department should have resumed his TTD after he was fired. The Department and Woodinville respond that denying O'Keefe's motion for summary judgment was proper because his work did not "[come] to an end" within the meaning of RCW 51.32.090(4). Br. of Resp't at 9-10. But Woodinville's primary argument is that O'Keefe failed to make a prima facie case for TTD benefits. And the Department contends that granting Woodinville summary judgment was inappropriate because fact questions remain as to whether O'Keefe was fired for cause. O'Keefe replies that under his interpretation of RCW 51.32.090(4)(a), Woodinville's reasons for firing him are immaterial. Whether directed at the Department or Woodinville, O'Keefe's arguments are based on interpreting RCW 51.32.090(4) to require resumption of TTD benefits whenever modified work comes to an end.

## I. Standard of Review

¶8 On appeal from the BIIA decision to the superior court, the appellant may raise only those issues presented to the BIIA and the appeal is limited to the record created before the BIIA. RCW 51.52.115. Here, the trial court granted summary judgment for Woodinville, finding that O'Keefe failed to present any evidence of continuing disability.

¶9 We review a summary judgment de novo, making the same inquiry as the trial court. *Romo v. Dep't of Labor & Indus.*, 92 Wn. App. 348, 353, 962 P.2d 844 (1998). Summary judgment is appropriate only "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). We consider the facts and the reasonable inferences from them in the light most favorable to O'Keefe, the nonmoving party. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982) (citing *Yakima Fruit & Cold Storage Co. v. Cent. Heating & Plumbing Co.*, 81 Wn.2d 528, 530, 503 P.2d 108 (1972)).

## II. RCW 51.32.090(4)(a)

¶10 RCW 51.32.090(4)(a) applies when a worker receiving TTD benefits returns to work at a modified job he is physically able to perform. The parties focus on the portion of the statute providing:

> If the [modified work] thereafter comes to an end before the worker's recovery is sufficient in the judgment of his or her physician . . . to permit him or her to return to his or her usual job, or to perform other available work offered by the employer of injury, the worker's temporary total disability payments shall be resumed.

RCW 51.32.090(4)(a).

¶11 O'Keefe contends that his work came to an end when Woodinville fired him. He reasons that under the plain language of RCW 51.32.090(4)(a), if his work came to an end for any reason, even firing, he is entitled to resume TTD payments. He supports his plain reading analysis by reminding us that the Industrial Insurance Act[2] " 'shall be liberally construed for the purpose of reducing to a minimum the suffering and economic loss arising from injuries . . . occurring in the course of employment.' " Br. of Appellant at 10-14 (quoting RCW 51.12.010). The Department argues that O'Keefe's employment, not the work, came to an end.

---

[2] Title 51 RCW.

■ ¶12 If a statute is unambiguous, we derive its meaning from the wording of the statute itself. *Cobra Roofing Serv., Inc. v. Dep't of Labor & Indus.*, 122 Wn. App. 402, 416-17, 97 P.3d 17 (2004); *Taylor v. Nalley's Fine Foods*, 119 Wn. App. 919, 923, 83 P.3d 1018 (2004). In construing a statute, we attempt to give effect to legislative intent. *Dep't of Labor & Indus. v. Kantor*, 94 Wn. App. 764, 775, 973 P.2d 30 (1999). And we do not interpret a statute to reach an absurd or unjust result. *Flanigan v. Dep't of Labor & Indus.*, 123 Wn.2d 418, 426, 869 P.2d 14 (1994).

■ ■ ¶13 A close reading of RCW 51.32.090(4)(a) reveals the flaws in O'Keefe's interpretation. Under RCW 51.32.090(4)(a), a worker who cannot return to the job of injury is no longer entitled to TTD benefits if a physician certifies that the worker is able to perform an alternate job the employer has made available. The worker's TTD benefits cease when the physician releases the worker to perform the work and the worker begins the alternate work. But TTD benefits resume if this work ends before the worker is, in his physician's judgment, able to resume his usual work or perform other available work the employer of injury offers.

¶14 O'Keefe stipulated that his physician would certify him as physically capable of performing the light duty job. And Woodinville's construction manager testified that O'Keefe's light duty job would have remained available to him but for his attendance and other problems. The work did not come to an end within the meaning of RCW 51-.32.090(4)(a). O'Keefe stopped performing it because Woodinville fired him for misconduct.

¶15 This interpretation accords with the BIIA's interpretation. The BIIA publishes its significant decisions and makes them available to the public. RCW 51.52.160. These decisions are nonbinding, but persuasive authority for this court. *See Weyerhaeuser Co. v. Tri*, 117 Wn.2d 128, 138, 814 P.2d 629 (1991).

¶16 In *In re Chad Thomas*, No. 00 10091 BIIA (July 31, 2001), the Board held that the employer's firing of the

claimant for aggressive and threatening language or behavior did not cause the worker's modified work to come to an end within the meaning of RCW 51.32.090(4)(a). And in *In re Jennifer Soesbe*, No. 02 19030 BIIA (Sept. 25, 2003), the Board reached the same conclusion, explaining that when the modified work ends for disciplinary reasons unrelated to the industrial injury, the modified job is "available" within the meaning of RCW 51.32.090(4)(a). It reasoned:

> An employer is not required to tolerate behavior from an injured worker that it would not tolerate from an employee who was not injured, nor does an employer exercise its right to have a satisfactory work force at the cost of replacing wages for an employee who would be earning the wage, but for his or her own behavior.

*In re Jennifer Soesbe*, No. 02 19030.[3]

¶17 All parties cite *Herr v. Department of Labor & Industries*, 74 Wn. App. 632, 875 P.2d 11 (1994). In *Herr*, the court rejected the claimant's argument that the 1975 amendments to RCW 51.32.090(4) created a new standard for determining if a worker is disabled. *Herr*, 74 Wn. App. at 634-35. And because Herr provided no evidence that he could not perform another type of work, the court held that he failed to make a prima facie case of disability. *Herr*, 74 Wn. App. at 636.

¶18 O'Keefe attempts to distinguish *Herr* because the "or to perform other available work" language in RCW 51.32.090(4) was subsequently changed to "or to perform other available work offered by the employer of injury." Br. of Appellant at 15. According to O'Keefe, because Woodinville did not offer him another job after it fired him, the new version of RCW 51.32.090(4) requires that his TTD benefits resume. We have already concluded that the legislature could not have intended this result.

¶19 Woodinville analogizes to *Herr*, arguing that because O'Keefe failed to produce evidence of a temporary

---

[3] The parties also cite *In re Sean Murphy*, No. 95 5987 BIIA (Dec. 1997), and *In re Floyd Petersen*, No. 01 23284 BIIA (Dec. 2002), but the Board did not designate them as significant decisions.

total disability other than his own testimony that he could not perform his job of injury, he failed to make a prima facie case. Woodinville is correct.

¶20 Temporary total disability is "a condition that temporarily incapacitates a worker from performing any work at any gainful employment"; it differs from permanent total disability in duration, not character. *Hubbard v. Dep't of Labor & Indus.*, 140 Wn.2d 35, 43, 992 P.2d 1002 (2000). The parties stipulated that O'Keefe's physician would testify that he was physically capable of performing the light duty job Woodinville gave him. Because O'Keefe is capable of gainful employment (the light duty job), he is not entitled to TTD benefits.

¶21 Finally, O'Keefe's interpretation of the statute leads to absurd results. He could have reinstated his TTD benefits at any time by performing poorly and thereby forcing Woodinville to fire him. The legislature surely expects more from O'Keefe and other temporarily disabled workers.

¶22 The Department claims that we must remand for a record trial to determine if Woodinville fired O'Keefe for cause. In response, O'Keefe relies on the interpretation of RCW 51.32.090(4) that we have rejected above, arguing that if he is correct, "then Woodinville's reason(s) for firing him is immaterial." Reply Br. of Appellant at 25. But O'Keefe criticizes the BIIA for accepting without investigating Woodinville's explanation that it fired him for violating its attendance policy. He relies primarily on *Wilmot v. Kaiser Aluminum & Chem. Corp.*, 118 Wn.2d 46, 821 P.2d 18 (1991), arguing that firing for violating a facially-neutral attendance policy does not, by itself, show that the firing was for good cause.

¶23 *Wilmot* does not help O'Keefe. That case involved a claim for wrongful termination in violation of the public policy expressed in RCW 51.48.025, which prohibits employers from firing employees who file workers' compensation claims or express an intent to do so. *See Wilmot*, 118 Wn.2d at 51-52. After concluding that this cause of action existed independent of the statutory remedy, the court held

that firing an employee for excessive absenteeism caused by an industrial injury, under a neutral attendance policy, may satisfy the employer's burden to offer a legitimate reason for the firing after the employee has made a prima facie case of retaliatory firing. *Wilmot*, 118 Wn.2d 74-76.

¶24 Here, O'Keefe seeks reinstatement of his TTD benefits under the Industrial Insurance Act, not damages in a civil tort action. Moreover, O'Keefe has not expressly tried to make a prima facie case that his firing was wrongful or establish that Woodinville's reasons were pretexual. To the contrary, he asserts that Woodinville's reason is "immaterial." Reply Br. of Appellant at 25.

¶25 Finally, the BIIA's unchallenged findings establish that Woodinville had good reason to fire O'Keefe. In addition to numerous absences, the BIIA found that O'Keefe often ignored requests to verify the reasons for his absence and indicated an unwillingness to follow instructions by failing to document the work he was asked to perform. The BIIA also found that O'Keefe's job site safety audits resulted in conflicts with other employees and that he made derogatory comments to one of Woodinville's customers.

¶26 These findings make the record trial the Department seeks unnecessary.

¶27 Affirmed.

HOUGHTON and BRIDGEWATER, JJ., concur.

Review denied at 156 Wn.2d 1003 (2006).