# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| RICHARD BOYD, | No. 48927-9-II |
| Appellant, | PUBLISHED OPINION |
| v. | |
| CITY OF OLYMPIA and DEPARTMENT OF LABOR & INDUSTRIES, | |
| Respondents. | |

BJORGEN, C.J. — Richard Boyd appeals the superior court's order affirming the decision of the Board of Industrial Insurance Appeals (Board) to grant summary judgment in favor of the City of Olympia in Boyd's appeal under the Industrial Insurance Act (IIA).

Boyd received workers' compensation benefits for a low back injury he suffered while in the City's employ. After several years, the Department of Labor and Industries (Department) issued a final order closing Boyd's claim and finding his medical condition stable. Boyd did not file a timely protest to that order, but one of his health care providers, Dr. Ashwin Rao, sent a chart note and bill to the City. The City did not construe the chart note and bill as a protest.

Several months later, Boyd appealed the Department's final order to the Board, which assigned it to an industrial appeals judge (IAJ). Boyd argued that Rao's chart note and bill were

a protest to the closing of Boyd's claim that should have automatically put the Department's final order in abeyance. The IAJ, and later the Board and superior court, determined that Rao's chart note and bill did not put the Department on notice that he was protesting the Department's final closure order of Boyd's claim.

We agree with these rulings and hold that the chart note and bill did not reasonably put the Department on notice that Rao was protesting[1] the Department's final closure order of Boyd's claim. We also reject Boyd's additional arguments related to evidentiary matters, judicial estoppel, and attorney fees. Accordingly, we affirm.

## FACTS

In October 2009, during his employment as a firefighter with the City, Boyd injured his low back. In November, he filed a claim for workers' compensation benefits for that injury, which the Department allowed.

On October 10, 2013, the Department issued an order closing Boyd's claim and directing the City to pay him a permanent partial disability award for his "Permanent Dorso-Lumbar and/or

---

[1] The Department also argued (1) that Rao did not have authority to protest the order because he was not Boyd's attending physician and (2) even if he had authority to protest, he was not aggrieved by the Department's order. Because we resolve this appeal on other grounds, we do not address these arguments.

No. 48927-9-II

Lumbosacral Impairments."[2] Certified Appeal Board Record (CABR) at 222.

On November 15, 2013, Carrie Fleischman of Matrix Absent Management, the City's third party workers' compensation administrator, received a chart note dated September 24, 2013 from Dr. John Green, providing the following details regarding Boyd's condition:

> ASSESSMENT
> 1.    Left internal and external snapping hip.
> 2.    Status post left arthroscopic debridement and osteoplasty.
> 3.    Chronic low back pain with primarily right-sided lower extremity residual.
>
> DISPOSITION
> I am sending [Boyd] to see one of my partners for an ultrasound-guided injection of both his psoas and his greater trochanteric bursa, and then, he is going to do physical therapy for stretching and strengthening of both his psoas and hip abductors, iliotibial band.
>
> He has some difficulties resolving his . . . [labor and industries'] claim as he has got 2 separate I[ndependent] M[edical] E[xamination] [IME] assessments.   I recommended to him a third IME assessment to break the tie.  These are some new symptoms of his hips that are unlikely to be related [to] his previously work-related problem.

CABR at 475.  As a result of Green's chart note, the October 10, 2013 closure order was held in abeyance.

On January 10, 2014, the City's attorney sent a letter to the Department's claims adjudicator, indicating that Green's chart note "served as a protest to the October 10, 2013

---

[2] The order specifically determined that Boyd's injury was under "Category (4)" of WAC 296-20-280, which states, in part:

> (4) Mild low back impairment, with mild continuous or moderate intermittent objective clinical findings of such impairment, with mild but significant X-ray findings and with mild but significant motor loss objectively demonstrated by atrophy and weakness of a specific muscle or muscle group.

This and subsequent categories include the presence or absence of a surgical fusion with normally expected residuals.

closing order."[3] CABR at 87. In this same letter, the City also protested the order closing

Boyd's low back injury claim, contending that Boyd's permanent partial disability award

overpaid him because he had received a comparable award for a similar injury several years

before.

On approximately January 15, 2014, Fleischman received a concurrence report from

Green, which clarified his September 24, 2013 chart note. Among other things, Green confirmed

that "Mr. Boyd had new hip symptoms [that] . . . were probably unrelated to his industrial injury

under this claim." CABR at 234.

On January 27, 2014, the Department issued a new order, which addressed the City's

protest and reversed the October 10, 2013 order. It states, in part:

> The order and notice dated 10/10/13 is reversed.

> Labor and Industries is closing this claim [SC770117] [for Boyd's 2009 low back injury] because the covered medical condition . . . is stable. No additional permanent partial disability will be paid over and above that paid under claim number SC 74311 [Boyd's comparable award raised by the City].

> [Boyd is] directed to pay the [City] for the overpayment of permanent partial disability.

CABR at 244.

The January 27, 2014 order was sent to Boyd's attorney and to Michael Lee, who was

identified as Boyd's attending physician. On January 29 Boyd protested the Department's

January 27 order. On February 18 the Department issued an order affirming its January 27 order.

---

[3] The Board's jurisdictional history states that the City's attorney sent a letter earlier on January 2, 2014, which indicated that Green's September 24 chart note might be considered a protest. It is unclear whether the Board's jurisdictional history was referring to the January 10, 2014 letter or a separate letter authored on January 2. In any event, whether there were one or two letters, the City's attorney construed Green's chart note as a protest.

No. 48927-9-II

On February 24, 2014, Fleishmann received a chart note and bill from Rao, to whom Green had referred Boyd for his hip injection, as noted in Green's chart note. Although these documents were received on February 24, 2014, Rao's chart note reflected treatment provided to Boyd on February 13, five days before the Department's February 18 order affirming the closing of Boyd's claim. In pertinent part, the chart note states:

> Office Visit
> 2/13/2014 Occupational Health                                        Richard Lee Boyd . . .
> . . . .
> Reason for Visit
> Procedure hip injection
> . . . .
> Progress Notes
> . . . .
> CC: Ongoing L hip, referral by Dr. Green
>
> HPI: Richard Lee Boyd is a 63 year old male[ ]presenting today for f/u L hip pain. He had arthroscopic labral[ ]debridement in early 2012, and last met me for a diagnostic hip[ ]injection. He did get several months of benefit from the surgery, but the pain has since returned, maybe more severe than before. . . . [H]istory is complicated somewhat by back pain and suspected lumbar[ ]radiculopathy, affecting the calf, causing atrophy, for which he's[ ]seen Dr. Michael Lee. Richard reports pain along the anterolateral[ ]hip, particularly with sleeping at night, which causes pain to[ ]linger t[hr]ough the night, challenging his sleep. He has some added[ ]lateral groin pain, and initially Dr[.] Green has suggested injections[]to the trochanter and psoas. He remains active, and hopes that he[]can make progress with injections, as he's been doing home[ ]PT.
> . . . .
> Diagnoses
> Hip[ ]pain – Primary
> Trochanteric bursitis of left[ ]hip
> . . . .
> Patient Instructions
> . . . .
> 1. S/p U/S guided trochanteric[]injections
> 2. Continue Home PT
> 3. F/u in 4-6 weeks to consider psoas vsintra-articular injection if not improving

CABR at 332-35. While Fleischman apparently also received a bill for Rao's treatment, the actual bill does not appear to be in the record.

Although Green had referred Boyd to Rao for this hip injection, Fleischman believed that Boyd's hip condition was unrelated to his low back injury. She also noticed that the chart note provided no workers' compensation claim or claim number. Fleischman did not construe Rao's chart note and bill as a protest to the Department's February 18 order closing Boyd's claim.

However, on March 28, 2014, in an attempt to clarify Rao's intention, Fleischman sent the following letter to Rao:

> Dear Dr. Rao:
>
> We received your bill for services performed on February 13, 2014, consisting of a medical visit and hip injection for Mr. Boyd. Your chart note indicates that Mr. Boyd was referred to you by Dr. Green for the injection.
>
> . . . .
>
> The Department closed this claim on February 18, 2014, indicating that no further treatment is necessary for the October 22, 2009 industrial injury. The self-insurer received your bill and chart note after the closing order was issued. It is unclear whether there was simply miscommunication regarding the billing party, or whether you intended to protest/appeal the closing order. If you do wish to protest/appeal the closing order, please send in a written protest to either the Department of Labor [and] Industries or to my office. The protest/appeal must be received within sixty days of the February 18, 2014 order.

CABR at 330. Rao did not respond to this letter.

After 60 days, with no protest or appeal, the Department's February 18, 2014 order became final. Former RCW 51.52.050(1) (2008). On June 18 Boyd's counsel at the time paid the City the overpayment for permanent partial disability benefits as required under the January 27 and February 18 orders. On October 20 Boyd filed a notice of appeal of the Department's February 18 order with the Board.

6

On February 2, 2015, Boyd moved for summary judgment, arguing that Fleischman should have construed Rao's chart note and bill as a protest to the February 18 order and that Fleischman was obligated to put the order in abeyance. The City also moved for summary judgment on the theory that Rao's chart note and bill were not a protest. Attached to the City's summary judgment motion was a declaration from Rao,[4] indicating that he did not intend the February 13 chart note and bill that he sent to Fleischman to be construed as a protest to the February 18 closure order.

In resolving these motions for summary judgment, the IAJ held that the chart note was not "reasonably calculated to put the Department/[City] on notice that Mr. Boyd disagreed with the Department's . . . closing order." CABR at 190. The IAJ further noted that the chart note "contains no claim number, contains no reference to the alleged industrial injury, contains no reference to the employer of injury, no protest language, and no specific recommendation of further treatment, just a follow up." CABR at 190.

Boyd petitioned the Board for review of the IAJ's decision. BR at 119. Boyd attached several new documents to his petition for review to the Board that were not before the IAJ, including:

> Exhibit A . . . page 3 of Richard Wohns M.D. May 14, 2010 chart notes;
> Exhibit B . . . page 1 of the July 1, 2011 Operative report from Dr. Green;
> Exhibit C . . . page 1 of the October 25, 2011 chart note of Dr. Green;
> Exhibit D . . . page 1 of the January 26, 2012 chart note of Dr. Green;
> . . . .
> Exhibit I . . . June 7, 2013 IME of Justin Sherfey, M.D.;
> . . . .

---

[4] In addition, the City's motion had a declaration from Green. Green's declaration stated that he believed Boyd's hip symptoms were unrelated to his low back injury on a more probable than not basis and that he intended the referral to Rao to be made outside the coverage of Boyd's industrial claim.

> Exhibit O . . . November 15, 2013 Claim Review file note of Carrie Fleischman;
> Exhibit P . . . January 8, 2010 Activity Prescription Form (APF), completed by
> Richard Wohns, M.D.

*See* CABR at 4, 135-37. The City moved to exclude these exhibits because they were not part of the record at the time the IAJ issued his order.

The Board agreed with the City and excluded Boyd's new evidence because he could have, in the exercise of reasonable diligence, discovered all the proposed evidence and presented it to the IAJ. The Board also agreed with the IAJ and affirmed the ruling that Rao's chart note and bill did not put the City or Department on notice that he was protesting the Department's February 18 order.

Boyd appealed the Board's order to the superior court. The superior court affirmed the Board's order granting the City's motion for summary judgment.

Boyd appeals.

## ANALYSIS

### I. STANDARD OF REVIEW

A superior court reviews the Board's actions de novo, but relies on the certified Board record and decides only those matters that the administrative tribunals previously determined. *Nelson v. Dep't of Labor & Indus.*, 198 Wn. App. 101, 108, 392 P.3d 1138 (2017). On review of summary judgment, we review de novo whether there are any genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. *Id.* at 109. We note also that the Board "publishes its significant decisions and makes them available to the public." *O'Keefe v. State, Dep't of Labor & Indus.*, 126 Wn. App. 760, 766, 109 P.3d 484 (2005). "These decisions are nonbinding, but persuasive authority for this court." *Id.*

## II.  PROTEST

The parties dispute whether Rao's chart note and bill should have reasonably put the Department on notice that Rao was protesting the Department's February 18 order.  We hold that the documents did not reasonably put the Department on notice.  Therefore, no genuine issue of material fact exists and the City was entitled to judgment as a matter of law.

A.  Industrial Insurance Act, Title 51 RCW, General Principles

The IIA "'is based on a compromise between workers and employers, under which workers become entitled to speedy and sure relief, while employers are immunized from common law responsibility.'"  *Nelson*, 198 Wn. App. at 110 (quoting *Flanigan v. Dep't of Labor & Indus.*, 123 Wn.2d 418, 422, 869 P.2d 14 (1994)).  When a worker entitled to compensation under the IIA is injured, "he or she shall receive proper and necessary medical and surgical services."  Former RCW 51.36.010(2)(a) (2007).  Once maximum medical improvement has been reached, the Department may deem the injured worker's condition "fixed and stable" and close the claim.  *See* former WAC 296-20-01002(3) (2008).  At that point, the worker may be eligible for an award of permanent disability, among other benefits.  RCW 51.32.055.

The Department's order closing an injured worker's claim becomes final 60 days after the Department communicates the order to the required parties, unless a written request for reconsideration (protest) or appeal is filed.  Former RCW 51.52.050(1).  If the Department receives a protest or request for reconsideration of its decision, this action "automatically operates to set aside the Department's order and hold in abeyance the final adjudication of the matter until the Department officially acts to issue its final decision by a 'further appealable order.'"  *Santos Alonzo*, 56,833 and 56,833A, 1981 WL 375946, at *3 (Wash. Bd. of Indus. Ins.

9

Appeals Dec. 9, 1981) (quoting RCW 51.52.060). The Department may receive a protest

through agents, which include self-insured employers and their representatives. *See In Re:*

*Harry D. Pittis*, 88 3651, 1989 WL 168610, at *4 (Wash. Bd. of Indus. Ins. Appeals Dec. 13,

1989).

B.    Standard for Determining a Protest

No published appellate court opinion has addressed the appropriate standard to determine

whether a document serves as a protest to a Department order. However, the parties argue that

the standard articulated in the significant Board decision of *In Re: Mike Lambert*, 91 0107, 1991

WL 11008451, at *1 (Wash. Bd. of Indus. Ins. Appeals Jan. 29, 1991) should govern.

In *Lambert*, the Board examined whether an attorney's letter could be construed as a protest

of the Department's order distributing a worker's third party recovery. *Id.* The Board held that:

> It is true that the attorney's letter of October 4, 1990 does not use the words
> "protest" or "request for reconsideration." It is also true that the attorney's letter
> does not specifically refer to the order of September 7, 1990. On the other hand,
> we have never imposed any strict requirements on what may constitute a "protest"
> or "request for reconsideration". . . . The use of "magical" statutory words is not
> required. *It is sufficient if the Department receives a written document, filed within
> the time allowed by law, which is reasonably calculated to put the Department on
> notice that the party submitting the document is requesting action inconsistent with
> the decision of the Department*. Upon receipt of the October 4, 1990 letter June
> Gorsky knew, or should have known, that the claimant was disputing the
> Department's right to share in his third party recovery and was thereby aggrieved
> by the order of September 7, 1990.

*Id*. (emphasis added) (citation omitted).

To be deemed a protest, the *Lambert* standard requires that the communication

reasonably put the Department on notice that the worker is taking issue with some Department

decision, which is the essence of a protest. The *Lambert* standard, however, does not require

specific words or other effective spells to unlock the doors of relief. As such, subject to the

modifications set out below, it serves well the purposes of the IIA. For these reasons, and finding no authority to the contrary, we generally adopt the *Lambert* standard.

The parties argue, though, about the nuances of the *Lambert* standard. Boyd contends that a court examines the written document only to determine whether it reasonably puts the Department on notice of a protest. In other words, other than knowing that the Department has issued an adverse decision against the injured worker, a court can look only at the four corners of the document to ascertain whether the Department was reasonably put on notice.

The Department and the City argue that a broader analysis should apply. That is, although a court should not delve into the mental processes of the Department adjudicator, it can look at what objective facts were available to the Department in considering the order.

We generally agree with the Department's and City's approach. As quoted earlier, *Lambert* states that "if the Department receives a written document, . . . which is reasonably calculated to put the Department on notice that the party . . . is requesting action inconsistent with the decision of the Department," then a protest of its action has occurred. *Lambert*, 1991 WL 11008451, at *1. *Lambert*'s articulation of the protest standard suggests that a court examines the document from the perspective of the Department or its agent. In that posture, a court examines information relevant to the protest that was in the possession of the Department employees or agents involved in handling the worker's claim.

We do take issue, however, with *Lambert*'s determination that a document needs to be reasonably "calculated" to put the Department on notice. "Calculated" suggests that somehow an individual's intent in sending a document, apart from the document itself or other evidence, could be taken into consideration in deciding whether a Department order was protested. To

11

ensure fair notice to the Department and to stay temptations to abuse, the standards for a protest should be objective ones and not rely on statements by the sender about his or her intentions. Thus, contrary to the City's position, this standard does not allow a court to examine Rao's later declaration indicating that he did not intend to protest the order.[5]

To conclude, to be a protest the communication must reasonably put the Department on notice that the worker is taking issue with some Department decision. In making this determination, we consider the content of the communication itself and information relevant to it that was in the possession of the Department employees or agents involved in handling the claim at the time of the communication. The use of any specific words or terminology is not required in a protest, and Rao's statement about his intentions does not play a role in deciding whether the communication should be treated as a protest.

C.      Application of the Protest Standard to Rao's Chart Note and Bill

Consistently with these rules, we turn to whether Rao's chart note and bill should have reasonably put the Department on notice that he was protesting the Department's February 18 order affirming its January 27 order. Those orders determined that Boyd's low back injury was stable, that his associated claim would be closed, and that he must reimburse the City for overpayment.

Boyd argues that the documents possess the following features that show Rao was protesting the February 18 order:  (1) the chart note states "Occupational Health" next to the date, (2) in the progress notes, Rao discusses Boyd's history with back pain, (3) in the patient

---

[5] We do not express an opinion whether we would examine Rao's declaration of his intent if it had been filed during the 60-day period for protests or appeals under former RCW 51.52.050.

instructions, Rao recommends that Boyd follow up in four to six weeks "to consider psoas vsintra-articular injection if . . . not improving," and (4) a bill for the medical treatment accompanied the chart note. CABR at 333-35.

Despite these features, we find that the documents would not reasonably put the Department on notice that Rao was protesting the February 18 order closing Boyd's claim for a low back injury. The thrust of Rao's chart note concerns a hip-related injury and hip-related treatment. The accompanying bill sent to the Department was for treatment of Boyd's hip. The requested action that was purportedly inconsistent with the Department's decision was "to consider psoas vsintra-articular injection if . . . not improving." However, Boyd has not shown how this type of injection was somehow related to his low back injury. Similarly, a bill requesting the Department to pay for treatment not covered by his low-back injury claim does not transform Rao's chart note into a protest of that claim.

As to the chart note's reference to occupational health, the January 27 order also refers to a different claim number than the one for his low back, suggesting that Boyd had multiple injury claims with the Department. Thus, the mere reference to occupational health did not reasonably put the Department on notice that the chart note was a protest of the decision closing his low back injury claim.

The only aspect of Rao's chart note weighing in favor of a protest is that it states that Boyd's "[h]istory is complicated somewhat by back pain." CABR at 333-35. But as already noted, the chart note did not involve treatment or request follow up for any low back related injury. A bald statement that Boyd's history is complicated by back pain does not transform the

13

chart note, which is related to his hip maladies, into one that would reasonably put the Department on notice of a protest of a decision related to a low back injury. Further, Rao's note does not reference a claim number, any of the Department's orders, or his employer. Although a protest does not need to contain these terms, their absence makes it more difficult to see how the Department could have reasonably been put on notice of a protest of an order relating to Boyd's low back injury.

In addition, the Department was aware that Green did not refer Boyd to Rao for low back claim related injuries. Green's concurrence report made that unequivocal.[6] Consideration of this report is consistent with the revised *Lambert* standard, where we consider what the Department knew at the time it received the document.

Under the standard adopted above, Rao's chart note, even accompanied by a bill, was not inconsistent with the February 18 order affirming the January 27 determination. These documents would not have reasonably put the Department on notice of a protest. Thus, the superior court did not err in determining that these documents were not a protest of the February 18 order.

---

[6] The parties dispute the chronological significance of the creation of Rao's chart note on February 13, the issuance of the closure order on February 18, and the Department's receipt on February 24 of Rao's chart note and accompanying bill. This sequence does not favor either party. On one hand, the Department and City have a valid argument that Boyd was treated *before* the February 18 closure order and thus Rao could not be responding to that decision. On the other hand, it could be that even though Rao treated Boyd before the February 18 order, he sent the chart note and bill *after* the order, which could support his sending those documents in response to that order. Thus, without more evidence in the record, we do not speculate what the chronology suggests. *See also In Re: Jerry D. Bartlett*, 08 11051, 08 11052 & 08 12758 (Wash. Bd. of Indus. Ins. Appeals Feb 19, 2009) (coming to the same conclusion with similar facts).

IV.  EVIDENTIARY MATTERS

Next, Boyd contends that (1) the Board abused its discretion in failing to consider new exhibits attached to his notice of appeal, (2) we should consider an appendix attached to his opening brief, and (3) we should determine that the City admitted several statements contained in a request for admissions sent to it.

A.      Exhibits Attached to Notice of Appeal

In determining whether Rao's chart note and bill were a protest, Boyd argues that the superior court and Board should have considered numerous documents that were not offered before the IAJ.  We disagree.

Boyd attached exhibits A, B, C, D, I, O, and P to his petition for review to the Board.  He did not move to admit these documents at the hearing before the IAJ.  In declining to consider them, the Board acted consistently with its decision in *In Re: Eileen P. Cleary*, 92 1119, 92 1119A, 1993 WL 308686, at \*2 (Wash. Bd. Indus. Ins. Appeals Apr. 12, 1993).  *Cleary*, as did the Board here, in essence used the standard for reconsideration under CR 59.  CR 59(a)(4) permits a trial court to reconsider its decision if a party shows that it has:

> Newly discovered evidence, material for the party making the application, which the party could not with reasonable diligence have discovered and produced at the trial.

Boyd contends that because the Board reviews an appeal of an IAJ's decision de novo, it was required to consider the new evidence presented to it.  We agree that the Board functions in

an appellate capacity to the IAJ and that its review is de novo. *Kingery v. Dep't of Labor & Indus.*, 132 Wn.2d 162, 171, 937 P.2d 565 (1997); RCW 51.52.100. We do not agree, though, that this posture compels the Board to accept new evidence that could have been offered before the IAJ.

Neither rule nor statute rises to heights of clarity in describing the Board's process. Its rules do disclose, though, that the IAJ is the functional equivalent of a trial court, where the bulk of testimony, exhibits, and evidence are admitted. *See* WAC 263-12-045; former WAC 263-12-115 (2008); WAC 263-12-135; WAC 263-12-140. The IAJ makes a proposed decision, which may be appealed to the Board. RCW 51.52.104. In making its decision on appeal, the Board may consider the proposed decision of the IAJ, the petition or petitions for review and "the record or any part thereof deemed necessary." *Accord*, former WAC 263-12-145(5) (2000).

Thus, to the extent the Board may consider new evidence not presented to the IAJ, *see Cleary*, 1993 WL 308686, at *1-2, that opportunity is roughly analogous to the opportunity to present new evidence on reconsideration under CR 59(a). With that, the Board's use of CR 59(a)(4) to restrict the submission of new evidence before it is reasonable and consistent with standards of fair practice.

In applying this standard, the Board determined that the dates on the exhibits suggested that, with reasonable diligence, they all could have been produced for consideration by the IAJ. The Board also noted that Boyd did not present any evidence to the contrary. On this record, neither the Board nor the superior court abused its discretion in excluding this evidence.

Boyd also points out that his response to the City's summary judgment motion before the IAJ stated that "[t]his motion is based on . . . the records of the [City] and the Department." CABR at 460. This, he argues, shows that the exhibits in question should have been considered.

However, WAC 263-12-135 clearly states:

No part of the department's record or other documents shall be made part of the record of the board *unless offered in evidence*.

(Emphasis added.) Boyd's mere reference to the Department's and City's records does not save his failure to offer the exhibits he wished the IAJ to examine.

Accordingly, this claim fails.

B.    Appendix Attached to Opening Brief

Boyd also attached an appendix to his opening brief to this court. It appears to be a nurse management report dated August 15, 2011. Under RAP 9.11, we may take additional evidence, if among other bases, it is equitable to excuse a party's failure to present the evidence to the trial court. RAP 9.11. Boyd fails to show how any of the criteria of RAP 9.11 are satisfied, which would justifiably allow us to consider this evidence. *Harbison v. Garden Valley Outfitters, Inc.*, 69 Wn. App. 590, 593-94, 849 P.2d 669 (1993). Accordingly, we do not consider this appendix.

C.    Request for Admissions

In his response to the City's summary judgment motion before the IAJ, Boyd attached a request for admissions that was propounded to the City. The City objected to several of the questions contained in the request, and Boyd now asks this court to rule against the City on those objections and deem Boyd's questions to be statements of admission by the City.

The practice in civil cases applies to appeals under the IIA. RCW 51.52.140. Under CR 36 Boyd was required to request that the IAJ determine the sufficiency of the City's objections to his requests for admissions. *See* CR 36(a). Boyd has not shown that he ever requested rulings on the City's objections to his questions. Accordingly, we reject Boyd's request to deem them to be admissions by the City.

## V. JUDICIAL ESTOPPEL

Boyd argues that because the City construed Green's chart note as a protest to the Department's October 10 order, it should be judicially estopped from construing Rao's chart note as *not* a protest to the February 18 order since the two chart notes possess similar features. We disagree.

"'Judicial estoppel is an equitable doctrine that precludes a party from asserting one position in *a court proceeding* and later seeking an advantage by taking a clearly inconsistent position.'" *Arkison v. Ethan Allen, Inc.*, 160 Wn.2d 535, 538, 160 P.3d 13 (2007) (emphasis added) (quoting *Bartley-Williams v. Kendall*, 134 Wn. App. 95, 98, 138 P.3d 1103 (2006)). "[J]udicial estoppel may be applied only in the event that a litigant's prior inconsistent position benefited the litigant or was accepted by the court." *Taylor v. Bell*, 185 Wn. App. 270, 282, 340 P.3d 951 (2014), *review denied*, 183 Wn.2d 1012 (2015).

Even assuming that Green's and Rao's chart notes were substantially similar, the City's interpretation of Green's chart note as a protest was not a position taken in a court proceeding

No. 48927-9-II

that would later bind it through judicial estoppel. Accordingly, this claim fails.

## VI. ATTORNEY FEES

Boyd requests an award of attorney fees and costs incurred at all levels of appeal under former RCW 51.52.120(2) (2007); RCW 51.52.130(1). Because Boyd does not prevail, we decline to award him attorney fees and costs.

## CONCLUSION

Under the appropriate standard for determining whether a document is a protest of a Department decision, Rao's chart note, even accompanied by a bill, was not a protest.

We affirm the superior court decision affirming the Board and decline to award attorney fees.

_____
MORGAN, C.J.

We concur:

_____
WORSWICK, J.

_____
LEE, J.

19